J. W. STEWART *vs.* GREGORY, CARTER & COMPANY.

Opinion filed December 6, 1900.

**Harmless Error—Secondary Evidence.**

> Where a witness was improperly permitted to state the contents of a written instrument, the error is cured by the immediate introduction of the instrument, which corresponds in all respects with the statements of the witness.

**Real Party in Interest—Undisclosed Principal.**

> A party contracting in his own name with a third party, but for an undisclosed principal, may himself maintain an action upon such contract.

**Unindorsed Bill of Lading.**

> Possession of an unindorsed bill of lading by a person other than the consignor or consignee raises no presumption that such person is the agent of the consignor.

Appeal from District Court, Cass County; *Pollock, J.*

Action by J. W. Stewart against Gregory, Carter & Co. Judgment for plaintiff. Defendant appeals.

Affirmed.

*S. G. More* and *Tilly & McLeod,* for appellant.

*Miller & Miller,* for respondent.

BARTHOLOMEW, C. J. Plaintiff is a farmer, residing near Buffalo, in Cass county. The defendant is a corporation doing a grain commission business in the city of Duluth. On October 6, 1898,

plaintiff loaded a certain car with wheat at said town of Buffalo, and billed the same to defendant at Duluth. This action is brought to recover the value of such car of wheat. The answer admits the formal parts of the complaint; admits the shipment of the wheat, and that the wheat so shipped was the property of the plaintiff; admits the receipt of the wheat by defendant, and its sale on plaintiff's account; and admits the value and the net proceeds as claimed. The sixth paragraph of the answer reads as follows: "Further answering said complaint, defendant says that upon the order of said plaintiff, and with his full knowledge and consent, it has fully paid for said wheat; that on or about the 7th day of October, 1898, the Bank of Buffalo, Buffalo, N. D., made a draft on defendant for the entire proceeds of said wheat, less said charges of $69.56 by direction and with the authority of said plaintiff, and that defendant accepted said draft, and paid the same in full." The sole issue, under the pleadings, was the question of payment. The jury found that issue in plaintiff's favor, and, a new trial being denied, defendant appeals, and assigns errors upon the rulings of the court in the admission of testimony, and also claims that the verdict is unsupported by the testimony in various enumerated particulars. It is undisputed that when the car of wheat was loaded the bill of lading was taken in plaintiff's name, and it was at once left at the Bank of Buffalo with the cashier, Mr. Batchelor. This was about 8 o'clock in the evening of said October 6th. On the day following, S. G. More, the managing officer of said bank, drew a draft upon defendant for the estimated value of the car of wheat, and signed plaintiff's name to the same by S. G. More, and attached the bill of lading thereto, and forwarded the same to defendant. The draft was promptly paid by defendant, and the proceeds remitted to S. G. More or the Bank of Buffalo. The defendant bases its allegation of payment upon two grounds: First, that S. G. More was authorized by the plaintiff, under the circumstances, to draw said draft and receive the proceeds; and, second, if not so authorized, yet the said proceeds were devoted to plaintiff's use and benefit, with his knowledge, and the act of Mr. More was thereby ratified.

This wheat was grown upon a certain quarter section of land which plaintiff held by contract of purchase from the Maryland Land Company. The purchase was on the crop-payment plan, and plaintiff was bound to deliver the one-third of the crop to said vendor. On the preceding spring the plaintiff had given the Bank of Buffalo a chattel mortgage upon two-thirds of the crop to be grown upon said tract of land. Mr. More testified that this mortgage was given to secure an existing indebtedness, while plaintiff testified it was also to secure future advances. The mortgage was not introduced. Prior to said October 6th the plaintiff had loaded two cars with wheat, grown upon said tract of land in said year, and had taken the bills of lading in the name of said bank, and delivered them to the bank. To exclude any appearance of actual

authority upon the part of Mr. More to draw the draft upon defendant for the wheat in controversy, plaintiff sought to show the terms of this contract of purchase of the land, and that Mr. More had full knowledge thereof, and hence must have known that the third car of wheat was not covered by the mortgage. Plaintiff was asked certain questions as to the terms of this contract. Objections therto were improperly overruled, but they were immediately followed by the introduction of the contract, and there is no pretense that plaintiff misstated any of its terms; hence the error was harmless. Defendant, in its cross-examination of plaintiff, sought to show that plaintiff was acting in bad faith in shipping the third of the wheat that should belong to his vendor of the land in his own name. The court excluded the testimony, and properly. The pleadings admit that this wheat belonged to plaintiff, but whether it did or not could not affect More's authority to draw the draft, or plaintiff's right to recover, because, if he was shipping in his own name for an undisclosed principal, he still has the right to recover in his own name. 1 Am. & Eng. Enc. Law. (2d Ed.) 1164, and cases cited. Defendant sought to show by one of its own witnesses that it was the custom of the Bank of Buffalo to draw drafts for customers upon bills of lading left at the bank. This was properly excluded. There was no showing or offer to show that plaintiff knew of any such custom, and even if we concede, which plaintiff directly denies, that the bank had so drawn for plaintiff in a prior year, that would not show his knowledge of any such custom. We have noticed all the assignments of error relative to the elucidation of testimony that have any appearance of merit.

The assignment to the effect that the verdict is without support in the testimony must also be overruled. Upon the testimony the jury were warranted in finding that the bill of lading was left at the bank late in the evening for plaintiff's convenience; that no authority was given to the bank or to Mr. More to draw upon defendant in plaintiff's name; that the bank well knew at that time that it had received all the wheat covered by the mortgage; that neither the bank nor Mr. More had ever before drawn against a bill of lading taken in plaintiff's name, and plaintiff had no knowledge of any custom so to do. These facts, if found, would negative any actual authority on the part of S. G. More to make the draft in question. Nor is there any evidence whatever that warranted the defendant in assuming that S. G. More had authority to sign plaintiff's name to the draft. If any transfer of title to the wheat could be assumed from the delivery of the bill of lading, such assumption was overcome by the fact that the draft was drawn in plaintiff's name, which was in itself an assertion that the wheat belonged to plaintiff. The question must hinge upon More's real or ostensible authority to sign plaintiff's name to the draft. As we have seen, there was no actual authority, and, so far as this record shows, plaintiff and defendant had never had any correspondence, directly or indirectly, so that it is not possible that plaintiff could

have induced defendant to believe that More was his agent. If the defendant had, in other instances, honored drafts drawn by Mr. More for the customers at his bank, it was doubtless done, as in this case, in reliance upon the responsibility of Mr. More or the Bank of Buffalo. The jury might honestly have reached the conclusion that there was no authority, real or ostensible, in Mr. More to draw the draft.

There remains the question of ratification. The bill of lading was left at the bank late in the evening of October 6th. About 4 o'clock in the afternoon of the the 7th of October the draft was mailed to Duluth. On October 8th plaintiff called at the bank, and a partial settlement was had. Plaintiff had purchased supplies from a certain firm in Buffalo, and More was responsible for the bill,—"morally responsible," he says, but under the evidence the jury might well have found a legal responsibility. The two cars of wheat that had been shipped in the name of the bank had been shipped some time before his partial settlement was made. At that time More requested plaintiff to get the bill for the supplies, and when the bill was produced More gave plaintiff a draft to pay for the same, which was accordingly done. This draft exceeded in amount the draft drawn against the car of wheat. More testifies, in effect, that plaintiff knew at that time that he (More) had drawn upon defendant, and that the proceeds of such draft went to pay the bill for supplies. Plaintiff, on the other hand, testifies that he had no knowledge whatever that More had drawn on defendant until, in answer to a letter which he caused to be sent to defendant asking for returns on said car of wheat, defendant wrote him, on October 20th, stating that it had remitted to Mr. More on a draft signed with plaintiff's name by S. G. More. If the jury believed plaintiff, there could have been no ratification of the act of Mr. More, because there was no knowledge thereof. The verdict has support in the evidence, and the judgment is affirmed. All concur.
(84 N. W. Rep. 553.)