# CHARLESTON.

COULTER *v.* BLATCHLEY.

Submitted September 9, 1901.    Decided March 15, 1902.

1. NON-RESIDENT—*Venue—At Law and Equity.*
   Under section 1, chapter 123, Code, an action at law or suit in equity may be brought against a non-resident of the state in any county of this state wherein he may be found or may have estate or debts due him, without regard to where the cause of action arose. (p. 164).

2. PRINCIPAL AND AGENT—*Parol Contract.*
   Where a parol contract is made by an agent in his own name for an undisclosed principal, either the agent or the principal may sue upon it, and parol evidence is admissible to enable the principal to show that he is the real contracting party. (p. 169).

3. MOTION TO STRIKE OUT—*Evidence—Jury.*
   Where in a trial before a jury there is any evidence tending to sustain the plaintiff's demand, the court should not strike out the evidence. (p. 170).

Error to Circuit Court, Barbour County.

Action by Ray C. Coulter against C. G. Blatchley. Judgment for plaintiff. Defendant brings error.

*Affirmed.*

J. HOP. WOODS, for plaintiff in error.

ICE & ICE, for defendant in error.

McWHORTER, JUDGE:

This was an action of *assumpsit* brought in the circuit court of Barbour County by Ray C. Coulter against C. G. Blatchley for the use of tools used in boring for oil. Plaintiff filed with

his declaration an account showing a balance due him of four hundred and seventy-two dollars and eighty-five cents. The defendant tendered his special plea in abatement to the jurisdiction of the court, to which plea the plaintiff demurred, the court sustained the demurrer, to which ruling of the court the defendant excepted. The substance of the plea is that the court should not take further cognizance of the action because the cause of action did not, or any part of it arise in the county of Barbour, but that the cause of action and every part thereof, if any there was, arose in the State of Pennsylvania, in the City of Philadelphia and at the time of issuing the writ the defendant did not reside in Barbour County but that he did then reside and had ever since resided in the State of Pennsylvania, Town of Delaware, county of Wayne. And defendant in his brief says the action being a transitory action would have entitled the plaintiff to have sued defendant in any county in which he might have been found and process served upon him, provided, the cause of action had arisen in this State, but that inasmuch as the plea not only set up the non-residence of the defendant at the time of the issuing of the writ and also at the time of the filing of the plea, and the further fact that the cause of action and every part of it arose in the State of Pennsylvania, the circuit court of Barbour County had no jurisdiction and the demurrer should have been overruled; that said averment distinguishes the case from *Vinal* v. *Compton,* 18 W. Va. 1, and *Beirne* v. *Rosser,* 26 Grat. 541, and brings it within the reason of the rule laid down in *Cooper* v. *Wyman,* 29 S. E. (N. C.) 947. The last case mentioned treats of a case where the defendant was a non-resident of the State and came into the State for the sole purpose of attending a litigation either as suitor or as witness and was, under the statute of that state, exempt from civil process during his coming, his stay and a reasonable time for returning. The fourth clause of section 1, chapter 123, Code, defining in what counties actions at law or suits in equity may be brought provides: That if it be against a non-resident of the State it may be brought in the county wherein the defendant may be found, or may have estate or debts due him. The common-law in regard to personal actions against non-residents has here simply been enacted in the statute and the matter is discussed and well settled in *Vinal* v. *Compton* and *Bierne* v. *Rosser,* cited; *Carson* v. *Insurance Co.,* 41 W. Va. 136;

*Quessenberry* v. *Loan Association,* 44 W. Va. 512; *Mahany* v. *Kephart,* 15 W. Va. 609. It is hard to conceive how the statute could be more definite and explicit, the demurrer to the plea was properly sustained. When the plaintiff had rested his case and before the defendant had offered or introduced any evidence, the defendant moved to strike out the plaintiff's evidence on the ground that there was a material variance between the allegations and the proof in that the declaration averred a contract as having been made between Ray C. Coulter, the plaintiff, and the defendant, C. G. Blatchley, and the evidence and every part of it showed that the contract, if any, was made between Robert C. Coulter, as the pretended agent of plaintiff, and the defendant, which pretended agency for plaintiff was not known or disclosed to the defendant until after the institution and former trial of this action. Which motion to strike out the evidence was objected to by plaintiff and the objection sustained, to which the defendant excepted. In *Ford* v. *Williams,* 21 How. 287, it is held: "Where a contract is made by an agent the principal whom he represents may maintain an action upon it in his own name, although the name of the principal was not disclosed at the time of making the contract; and, although the contract be in writing, parol evidence is admissible to show that the agent was acting for his principal." And in *Deitz* v. *Insurance Co.,* 31 W. Va. 851, it is held: "Where a contract not under seal is made by an agent in his own name for an undisclosed principal, either the agent or the principal may sue upon it, and parol evidence is admissible to enable the principal to show that he is the real contracting party." In *Powell* v. *Love,* 36 W. Va. 96, Syl. 1, it is held: "Where, on a jury trial, there is any evidence tending to sustain the plaintiff's demand, the court ought not to strike out the evidence."

Defendant says it was error to give the following three instructions for the plaintiff over the objection of the defendant: "No. 1. The court instructs the jury that if they believe from the evidence that the defendant failed to return or to account for the value of any of the tools rented to him, then in that case they should find for the plaintiff the value of such tools not returned. No. 2. The court instructs the jury that if they believe from the evidence that the defendant had hired the plaintiff's tools and had quit work on the well in question, and had not purchased said tools, it was the duty of the defendant to

immediately return the tools to the plaintiff, and in case he failed to do so, notify the plaintiff that he was done with the tools, and if he failed to do so, then in that event the jury should find for the plaintiff. No. 3. The court instructs the jury that if they believe from the evidence that Floyd Teter was the agent of the defendant in charge at the well in controversy, and that he placed M. M. Hoff in charge of said well temporarily in his (Teter's) absence, and never returned to assume the management of said well, and never discharged Hoff from the managing and looking after said well, and that said Hoff was never discharged by the defendant from said management, and that the defendant ratified the act of the said Teter, then in that event the acts, declarations and conduct of said Hoff in managing and controlling said well would bind the defendant, and the jury should find for the plaintiff." The argument of plaintiff in error against plaintiff's instructions Nos. 1 and 2, that there was nothing in the record to show that plaintiff in error either agreed to account for the value of the tools or to return the same to the plaintiff, "there was no duty or obligation upon appellant either express or implied to return such tools. *Non constat,* but that the cost of returning the same was more than the value of the tools themselves." Instruction No. 1 relates to items amounting to only twenty-three dollars, all the balance of the account being for the hire of the tools and not for their value. While the instruction does not state the law it was not reversible error to give it, for the reason that the amount to which it relates is not sufficient to give appellate jurisdiction. The owner of property loaned or hired cannot recover its value from the bailee without showing a prior demand for its return, or that, by some means, there has been a conversion of it by the bailee. 3 Am. & Eng. Enc. Law, (2d. Ed.) 758; Story on Bailments sec. 122, 269. Instruction No. 2 was properly given. When tools were hired by plaintiff in error in the absence of any definite contract as to the disposition of them when he was through with the use of them, there was an implied contract on his part to return them to the owner or to notify him that he was done with them, when they would be subject to his order. See 3 A. & E. Enc. L. 733, (2d Ed.); *Hubbell* v. *Blandy,* 87 Mich. 209, (24 Am. St. 154). While the plaintiff in error claims in his evidence that he quit work on the well and had nothing to do with it after the 25th of August,

he admits in his testimony that he gave no notice to the plaintiff that he was through with the tools. In his discussion of the instruction No. 3 counsel for plaintiff in error "insists that the instruction is strained and unnatural and undertakes to charge appellant far beyond the natural scope of the agency therein referred to; that it violates the rule of *dum fervet opus* and proceed upon the assumption, not sufficiently proved, that Floyd Teter had authority to employ Dr. M. M. Hoff, and that because Hoff was never discharged by appellant this amounted to a ratification of the act of Teter in his employment, and that therefore, the acts, declarations and conduct of Hoff would bind appellant." It will be noticed that in this argument counsel has left out the very important further proposition in said instruction, after stating that Hoff was never discharged by the defendant from said management, the words: "and that the defendant ratified the act of said Teter." In his testimony plaintiff in error admits the agency of Floyd Teter; that he was his general agent, looking after his interests in that section generally; that he had no direct authority to act in the oil business but anything he did he approved. Teter put Hoff in charge of the well and never returned to assume the management of the well. If the agent exceeds his authority the act may be ratified by the principal; and it is not necessary that there should be any positive or direct confirmation. *Curry* v. *Hale,* 15 W. Va. 867; *Dewing* v. *Hutton,* 27 S. E. 670. Plaintiff in error ask for five instructions to the jury, 1 to 5 inclusive, Nos. 1, 2, and 4 were given. The first and second in relation to the agency of Hoff for the defendant to the effect that to entitle the plaintiff to recover on any contract or agreement made by said Hoff, as agent, the agency must be established by the plaintiff; and the fourth was that the burden of proof rested on plaintiff and he must prove his case by a preponderance of the evidence. Instructions Nos. 3 and 5, which were refused by the court, were as follows: "No. 3. The court instructs the jury that if they believe from the evidence that the defendant never had any dealings or made any contract with the plaintiff, Ray C. Coulter, in respect to the matter involved in this suit, but that all his dealings in respect thereto were with the witness, R. C. Coulter, who is not the plaintiff, but the reputed agent of the plaintiff, and that such agency was not known to the defendant until after the institution of this suit, then in that

event the plaintiff cannot recover in this suit, but the same should be brought in the name of said agent, R. C. Coulter. No. 5. The court instructs the jury that if they believe from the evidence that the witness, Dr. M. M. Hoff, was the agent of the defendant in respect to the matters involved in the plaintiff's account, and that the plaintiff relies upon such agency, then it was the duty of the plaintiff to have proved, or to have attempted to prove, such agency by the testimony of the witness Hoff, and that his failure to do subjects the plaintiff to the conclusive legal presumption that if he had attempted to prove the same the testimony of said witness would have been against the plaintiff." It will be seen that instruction No. 3 is based upon the same theory as assignment of error No. 1, where it is insisted that the court erred in not striking out the evidence of plaintiff because of material and fatal variance between the allegation and the proof, and for the reasons there given in the treatment of said assignment No. 1, the court was right in refusing instruction No. 3. As to instruction No. 5, refused by the court. It is contended by plaintiff in error that there was no evidence tending to prove the agency of Hoff, and yet, this instruction admits the fact that evidence had been given to that effect. If plaintiff had not introduced sufficient evidence, or brought it out on cross examination of the witnesses, establishing the agency of Hoff, it was his misfortune. Whether he had established the agency of Hoff was a question wholly for the jury, whatever the presumption might have been against one party or the other, if Hoff had not been placed upon the witness stand, is immaterial since he was examined fully as a witness and cross-examined, and the jury had the benefit of his testimony and they could and doubtless did give it such weight as to them seemed proper. The contract for the use of the tools was made not by the agent of plaintiff in error but by himself with Robert C. Coulter, the agent of Ray C. Coulter so it was not necessary to introduce Hoff to establish the main contract as that was made by the principal. John Garber says that he and Mr. Coulter and Mr. Blatchley were together at Dr. Hoff's residence in Philippi when Mr. Blatchley asked Coulter to leave his tools for witness to work with and Coulter gave him a list of the tools; that Mr. Blatchley told him to look to Dr. Hoff, that he would attend to getting all tools and other supplies wanted; that Dr. Hoff had him order at different times and on one or two occa-

sions sent him to Mannington for tools; and in answer to the
question how and for whom Dr. Hoff was acting, the witness
answered: "Well, when Mr. Coulter left I asked Mr. Blatchley
who would furnish me the supplies and anything that I might
need, and he told me that Dr. Hoff would attend to it; conse-
quently when I wanted fuel, or tools or anything, or whatever
I wanted, I went to Dr. Hoff. He ordered them if present or
sent me after them. He had me order them occasionally."

Defendant's bill of exception No. 5 goes to all the exceptions
taken to parts of the evidence as set out in bill of exception No.
1, which included all the oral testimony given in the case and
especially "to certain numerous declarations and acts of one M.
M. Hoff, Floyd Teter and others for the purpose of proving or
tending to prove that said Hoff and Teter were the agents of
defendant in the use of, and in respect to the use of and deten-
tion of the tools of plaintiff, as set out in his account in this
action on and after the 25th day of August, 1896, to all of
which testimony in chief and upon said cross-examination and
every part thereof, for the purpose aforesaid, defendant ob-
jected," which objection the court overruled. Counsel for plain-
tiff in error in his brief refers to this evidence in a general way
and also, what he terms, the reckless cross examination of ap-
pellant's witnesses by appellee's counsel in cross examining them
about matters concerning which they were not examined in
chief, and in presuming in such cross examination that to be
proved which was not proved for the purpose of establishing, or
tending to establish, this agency, which being permitted by the
court was a palpable violation of the law of evidence and cites
1 Greenleaf on Evidence, s. 449; 1 Starkie on Evidence, 188; and
also *State* v. *Hatfield,* 37 S. E. 626, but he fails to point out
such parts of the evidence to which such authorities are appli-
cable. I note one objection to a question asked Dr. Hoff on
cross examination "When he (Floyd Teter) left over there he
asked you to stay at the well, now when was that Teter told
you that?" This question was objected to, objection overruled
and exception taken, but it was admitted by Blatchley in his
testimony that Teter was his agent. Also a question asked Mr.
Blatchley on cross examination as to whether he would have
had, under his understanding of the arrangement or contract,
any interest in the oil in case they had struck it in that well,
which was also objected to, objection overruled and exception

taken. It is not suggested in what manner this could be prejudicial to the defendant. It does not appear that objection was made to the admissibility of evidence of witness Coulter or that there was objection made to the mode of cross examining witnesses by appellee's counsel. This was necessary that a proper bill of exceptions might be taken to the rulings of the court in relation thereto. *Nadenbousch* v. *Sharer*, 2 W. Va. 285; *Robinson* v. *Pitzer*, 3 W. Va. 335; *Wickes* v. *R. R. Co.*, 14 W. Va. 157.

Bill of exception No. 6 goes to the admission in evidence of a paper writing identified by witness, John Garber, as being in the handwriting of one Frank Scott purporting to be a record of the time of witness Garber while working on the oil well on and after the 25th day of August, 1896, upon which said writing a pencil memorandum, signed M. M. Hoff, "for the purpose of showing the agency of Dr. M. M. Hoff in this controversy for the defendant Blatchley, as being the man in charge of the well at the time the tools were used that are in controversy." The record shows that when first offered the paper was objected to and objection sustained, it was then offered by the plaintiff for the purpose of showing the agency of Dr. Hoff as indicated in the bill of exceptions but was not permitted to go in for that purpose, but it is shown that "the court admits the time kept by Frank Scott of John Garber in evidence for the purpose of tending to make out the correctness of plaintiff's account;" so that it was not admitted for the purpose for which it was offered by plaintiff, of showing the agency of Hoff, but simply of tending to make out the correctness of plaintiff's account, the said Garber being in charge of the tools for which plaintiff was charging for the time. It had been pretty well established that Dr. Hoff had been in charge of the well and had endorsed and o. k'd papers. In *Mitchum* v. *Dunlap*, 98 Mo. 418, it is held: "The authority of an agent need not be proved by an express contract of agency, it may be proved by the habits and course of business of the principal." And further "Agency and the extent of the authority of the agent may be inferred from circumstances." *Union Stockyards etc.* v. *Mallory*, 157 Ill. 554; (48 Am. St. 341).

Bill of exception No. 7 under assignment of error No. 6 sets out the contract in writing dated 17th day of June, 1895, between V. W. Kittle, W. P. Scott and S. T. H. Holt of the first

part and Charles G. Blatchley of the second part. This is a contract by which Blatchley undertook to bore for oil on the leases of the parties of the first part and under which contract the well was bored at which the tools were used the rental of which is the principal item sued upon. It is said in the brief of counsel for plaintiff in error that this contract was a matter wholly irrelevant to the controversy in this action and ought to have been excluded. This is all the reference made to that matter in his brief. This contract was the basis of the defendant's actions in relation to the work at that oil well. It showed his duties and liabilities thereunder, and his interest which would come to him from the leases in case oil was struck. It seems to me it was admissible in evidence to show these facts and defendant's connection with the work.

The seventh assignment of error is that the court refused to set aside the verdict and grant defendant a new trial for the reasons set out, assigned and excepted to in bill of exception No. 1, which have been herein referred to and discussed in the treatment of said assignment of error. The evidence was conflicting and came within the province of the jury, which found for the defendant in error. "Where a motion for a new trial is made, on the ground that the verdict is contrary to the evidence, and the motion is denied, the opinion of the court, which tried the cause, is on such point entitled to great respect in the appellate court. And the appellate court in such case will grant such new trial only in the case of a plain deviation from right and justice." *State* v. *Hunter*, 37 W. Va. 744; *Sigler* v. *Beebe*, 44 W. Va. 587; *Jones* v. *Manufacturing Co.*, 38 W. Va. 148, (18 S. E. 478); *Gilmer* v. *Sydenstricker*, 42 W. Va. 52. There appearing to be no reversible error in the judgment, the same is affirmed.

*Affirmed.*