JAMES KING, Appellee, v. FARMERS GRAIN COMPANY, Appellant.

**FRAUDS, STATUTE OF: Sale of Goods—Part Payment on Sale of Differently Owned Goods.** An oral contract to sell a specified quantity of corn, without the buyer's knowing that the seller is, by said

contract, contracting (1) to sell (in his own right) his own corn, and (2) to sell (as agent) the separately owned corn of two other parties, is taken out of the statute of frauds in so far *only* as the contract covers the corn owned by the seller by a partial payment which the seller applies on the purchase price of his own corn.

PRESTON, J., dissents.

*Appeal from Dallas District Court.*—H. S. DUGAN, Judge.

JUNE 23, 1922.

REHEARING DENIED DECEMBER 15, 1922.

ACTION at law, to recover damages for the breach of an alleged oral contract for the sale of corn. Verdict of the jury and judgment for plaintiff. The defendant appeals.—*Reversed.*

*Harry Wifvat* and *William H. Winegar,* for appellant.

*George J. Dugan* and *White & Clarke,* for appellee.

STEVENS, C. J.—The plaintiff alleged in his petition that, on or about June 15, 1920, he entered into an oral contract with the defendant for the sale of 6,500 bushels of corn, and that, some time later, the defendant's agent paid him $100 on the contract. The defendant, after admitting that it is a corporation, denied the allegations of plaintiff's petition, and averred that the contract sued upon is within the statute of frauds and void, and set up other and further defenses, which, in view of the conclusion reached upon the other questions, it is unnecessary to state.

At the time the alleged oral contract was entered into, plaintiff owned 2,400 bushels of corn, John Shoemaker, his landlord, a like amount, and Chester King, his brother, about 2,000 bushels of corn. Plaintiff claims, and the evidence shows, that he was authorized by Shoemaker and by his brother to sell their corn to appellant for them. The sale was made in the name of appellee, without disclosing the fact that he was acting as agent for Shoemaker and his brother, and that a portion of

the corn belonged to them.  Appellee does not claim to have purchased the corn of either principal, nor that he contemplated doing so.  The sale, although made in his name, was for the separate benefit of himself, Shoemaker, and his brother.  No part of the purchase price was paid at the time the contract was entered into, but about a month later, appellant paid appellee $100 by check on the Dawson Savings Bank.  Some claim is made by counsel for appellant that no valid contract of sale was entered into, and that the evidence fails to show that the payment of $100 was intended to apply on the contract.  These questions were properly submitted to the jury, which found in favor of plaintiff.

The court instructed the jury that, if plaintiff was entitled to recover at all, the measure of his recovery was the difference between the contract price of $1.75 per bushel for 6,500 bushels of corn and the market price at which he could have sold same with reasonable effort, after he was notified by defendant that it would not accept the delivery of the corn.  Proper timely exception was taken to this instruction.

Plaintiff, in the transaction in question, acted in a dual capacity: that is, for himself, and as agent for Shoemaker and his brother separately.  The corn of plaintiff and Shoemaker was on the farm occupied by the former, while that owned by Chester was on another farm, about one-half mile distant.  The corn was owned, in the quantity stated, separately by the plaintiff and his principals.  They had no joint interest therein.  Plaintiff did not intend to engage in speculation, at the time he sold the corn, nor does he claim to have had 6,500 bushels of his own for sale.  Both Shoemaker and Chester King were examined as witnesses on behalf of plaintiff, and testified that they authorized plaintiff to sell their corn, and that they were ready and willing to deliver the same to appellant, in fulfillment of the contract entered into by plaintiff on their behalf.  It is obvious, therefore, that plaintiff did not, by any transaction with either Shoemaker or King, become the owner of the corn in their possession, nor did he engage to deliver the same for them to appellant, or in any way bind them to make such delivery.  His agency, under the testimony, was limited strictly to the sale of the corn.  Plaintiff was not in a position to compel

either Shoemaker or his brother to deliver their corn to appellant upon the contract made by him. The market price of corn greatly declined, and, as would be quite natural, Shoemaker and King were willing to deliver their part of the corn. Subject to certain exceptions not present in this case, the agent who sells the property of his principal in his own name may maintain an action upon the contract for the benefit of his principals. *Brown v. Sharkey*, 93 Iowa 157; *Gooden v. Rayl*, 85 Iowa 592; *Knott v. Dubuque & S. C. R. Co.*, 84 Iowa 462; *Moorehead v. Hyde & Braden*, 38 Iowa 382; *Wells v. Western Union Tel. Co.*, 144 Iowa 605; *Smith & Son v. Bloom*, 159 Iowa 592; Code Section 3459.

Likewise, it is ordinarily true, and under the facts of this case is true, that, notwithstanding the fact that the contract may have been entered into on behalf of the principal in the name of the agent, an action may be brought thereon, or for a breach thereof by the principal in his own name. *Shields v. Coyne*, 148 Iowa 313; *Wells v. Western Union Tel. Co.*, supra.

Whether, however, the action be prosecuted in the name of the agent for the benefit of the principal, or by the principal in his own name, there can be no recovery in favor of either, if the contract is not enforcible because within the statute of frauds. It is conceded that no part of the corn was delivered or actually received by appellant; that no note or memorandum in writing was signed by the party to be charged, or by the agent thereof; and that no part of the purchase price was paid for a month after the terms of the contract were agreed upon. Subdivision 1 of Section 4625 of the Code was repealed by Chapter 396 of the Acts of the Thirty-eighth General Assembly, commonly known as the Uniform Sales Act, and Section 4, Subdivisions (1) and (2), of said chapter was enacted in lieu thereof. Said subdivisions are as follows:

"Section 4. (1) A contract to sell or a sale of any goods or choses in action shall not be enforcible by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold and actually receive the same or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.

"(2)   The provisions of this section apply to every such contract or sale, notwithstanding that the goods may be intended to be delivered at some future time or may not at the time of such contract or sale be actually made, procured, or provided, or fit or ready for delivery, or some act may be requisite for the making or completing thereof, or rendering the same fit for delivery; but if the goods are to be manufactured by the seller especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business, the provisions of this section shall not apply."

Concerning the $100 payment which was made by check payable to plaintiff, upon the Dawson Savings Bank, the evidence on behalf of plaintiff showed that he, in company with his brother, went to the office of appellant and requested an advance payment on the contract. Appellant's agent at first declined this request. Plaintiff thereupon informed the agent that he was hard up; that he had some men working for him who wanted their wages paid; and that he needed some money. He asked for a payment of $100. Appellant's agent then gave him the check for $100. This payment is the sole reliance of appellee to take the case out of the statute of frauds. Plaintiff did not, at the time of making the contract, disclose that he was acting as the agent of Shoemaker and King in the sale of the larger part of the quantity agreed upon, nor was this fact known to appellant's agent at the time of the $100 payment. No claim is made by anyone that any part of the $100 payment was intended either by appellant or plaintiff for the benefit of Shoemaker or Chester King. W. E. Chinn, appellant's agent, did not know that plaintiff was the agent of his landlord and of his brother, and the statements made by plaintiff show conclusively that he intended and treated the payment as an advancement upon the purchase price of his own corn, and applied it to his own use. This took the contract out of the statute, so far as he was personally concerned. The corn was owned in severalty, and sold at the agreed price of $1.75 per bushel. The contract was, therefore, separable, and, unless unenforcible because within the statute, an independent action against appellant for damages could have been maintained by each of the parties. The statute of frauds quoted, supra, provides that, where no

part of the property is delivered or purchase price paid, a contract for the sale of personal property is unenforcible, unless a note or memorandum in writing is signed by the party to be charged, or by his agent in his behalf. Had Shoemaker or Chester King commenced separate actions against appellant, to recover damages for the refusal of the latter to accept their corn, would a plea of the statute of frauds have been a good defense thereto? It certainly would, unless the payment made to appellee operated to take the entire transaction out of the statute. We have found no case squarely in point. The Supreme Court of Michigan, in *Burhans v. Corey,* 17 Mich. 282, is somewhat in point. In that case, the defendant purchased a quantity of wool owned jointly by three parties. The buyer paid $30 to one of the owners, without directing that it be divided or prorated among the owners. The buyer refused to accept the wool, and pleaded the statute of frauds as a defense to an action brought by the sellers for damages for the breach of the contract. The court held that the payment belonged ratably to the sellers, and sustained the contract. It will be observed that, in the Michigan case, the buyer knew that the wool was owned by three different parties, and the transaction was, in effect, carried on directly by him with the several parties. In the case before us, as already stated, appellant could not have intended that the payment should be applied *pro rata* among plaintiff and his principals, for the reason that plaintiff's agency had not been disclosed to him. Plaintiff clearly intended that the payment should apply upon the purchase price of his own corn. The law could not imply a contrary intention. It seems to us that, under these circumstances, the statute of frauds would have been a complete bar to the recovery of damages by either Shoemaker or Chester King in separate actions brought in their own names for that purpose. If so, it is a complete bar to the action brought in the name of their agent for their benefit. Nothing was paid upon the contract entered into by plaintiff as agent for and on behalf of his principals. His contract, when entered into, was apparently entire and indivisible; but it was, in fact, separable. He did not disclose his agency or the name of his principals. In so far as he contemplated the sale of his own corn, he acted as a principal, and in so far as the contract

was made for the benefit of Shoemaker and Chester, it contemplated the sale and delivery of the corn owned separately by them.

So far as the transaction related to their corn, plaintiff acted in a purely representative capacity. Plaintiff neither owned, sold, nor intended to deliver 6,500 bushels of corn to appellant for himself. He expected, without any binding arrangement or contract with them to that effect, that Shoemaker and his brother would deliver the balance of the 6,500 bushels upon the contract. It would be a harsh rule that would allow plaintiff to recover damages upon the theory that he had sold 6,500 bushels of corn, when practically two thirds of it he did not own, nor contemplate nor intend himself to deliver, but for the delivery of which he relied entirely upon third parties, who were not legally bound to make such delivery either to him or to the appellant.

It is our conclusion that the court erred in instructing the jury that plaintiff was entitled to recover damages from appellant on account of the refusal to accept the corn offered in excess of 2,400 bushels. The judgment of the court below is— *Reversed.*

WEAVER, EVANS, ARTHUR, FAVILLE, and DE GRAFF, JJ., concur.

PRESTON, J. (dissenting.) 1. It seems to me that the majority opinion is written upon a theory entirely different from that adopted by the parties and the trial court, and upon issues not in the case. There is no pleading on behalf of the defendant that plaintiff is not the real party in interest, or that he may not maintain the suit, or that he was acting as agent for other parties, or that plaintiff could not recover for all the corn contracted for, or for his own corn, or that the contract was separable. There is no plea in abatement. There is not a suggestion in the record that the $100 was paid only on plaintiff's part of the corn. It was paid on the *contract*. When it was paid, defendant did not even know that plaintiff was selling for the others. There is no error assigned, nor brief point, nor a suggestion in argument, on the point upon which the majority bases its opinion. Indeed, the one sentence in the evidence used

as a foundation for the opinion was objected to by appellant because there was no such issue in the case. If the question of agency, or the question of the Statute of Frauds, other than as pleaded and claimed by defendant, is in the case at all, even then I think plaintiff has brought himself within the law, and is entitled to maintain the action and recover damages as to the entire amount of corn contracted for.

Plaintiff was a farmer. He owned about 2,400 bushels of corn; his landlord about 2,000 bushels; and his brother owned enough more to make 6,500 bushels. They all had the corn on hand, and according to the evidence, held it for the purpose of delivering it to the defendant, in compliance with the contract. At the proper time, it was tendered to defendant, but, the price of corn having gone down, defendant refused to accept it. Defendant is engaged in buying and selling grain. Plaintiff alleges that, about June 15, 1920, he sold to defendant, by oral agreement, 6,500 bushels of corn at $1.75 per bushel, the said corn to be delivered at defendant's elevator at Dawson. So far as appears from the pleadings, plaintiff made this contract on his own behalf. Certain it is that it does not show, and it was not disclosed to the defendant at the time of the making of the contract or when the $100 was paid, that plaintiff did not have 6,500 bushels of corn, or that he had been authorized by the other two to sell theirs. The plaintiff had a right to make such a contract in his own name and on his own. behalf, and for that number of bushels, and to make a binding contract in his own name even though he was acting for the other two when this was not disclosed to the defendant. Though doubtless, as between plaintiff and his landlord and his brother, he was their agent, and they his principals, still, in this transaction, as between plaintiff and defendant, plaintiff was the ostensible principal. Where an agent, in making a contract with a third person, acts in his own name, and does not disclose the name of his principal or the existence of an agency, the third person contracts *personally* with the agent. In such case, the agent becomes, as to the third person, the real contracting party, and therefore has a right of action on the contract, although the principal may also sue thereon in his own name. *Leeds v. Marine Ins. Co.*, 6 Wheat. (U. S.) 565 (5 L. Ed. 332); *Nabors v. Shippey*, 15 Ala. 293;

*Carter v. Southern R. Co.*, 111 Ga. 38; *Hewitt v. Torson*, 124 Ill. App. 375; *Rowe v. Rand*, 111 Ind. 206; *Atcherson's Admr. v. Talbot*, 5 Dana (Ky.) 324; *Terry v. Brightman*, 132 Mass. 318; *Rhoades v. Blackiston*, 106 Mass. 334; *Borrowscale v. Bosworth*, 99 Mass. 378; *Colburn v. Phillips*, 13 Gray (Mass.) 64; *Kelly v. Thuey*, 102 Mo. 522; *Coggburn v. Simpson*, 22 Mo. 351; *Simons v. Wittman*, 113 Mo. App. 357; *Barham v. Bell*, 112 N. C. 131; *Stewart v. Gregory*, 9 N. D. 618; *Tinsley v. Dowell*, 87 Tex. 23; *Texas Overall Co. v. Mummert*, (Tex. Civ. App.) 157 S. W. 219; *San Jacinto Rice Co. v. Lockett & Co.*, (Tex. Civ. App.) 145 S. W. 1046; *Lapham v. Green*, 9 Vt. 407; *Oliver Ref. Co. v. Portsmouth Cotton Oil Ref. Corp.*, 109 Va. 513; *National Bank of Va. v. Nolting*, 94 Va. 263; *Coulter v. Blatchley*, 51 W. Va. 163; *Evans v. Evans*, 3 Adol. & Ellis 132; *Sims v. Bond*, 5 Bar. & Adol. 389; *Fisher v. Marsh*, 6 Best & Smith 411; *Rayner v. Grote*, 16 Law Jour. Exch. of Pleas 79; 2 Corpus Juris 897. As to the last sentence in the proposition last stated, that the principal may sue also in his own name, see *Stockbarger v. Sain*, 69 Ill. App. 436; *Oelrichs v. Ford*, 21 Md. 489; *Anderson v. Stewart*, 108 Md. 340; and numerous other cases cited in note at page 898, 2 Corpus Juris. In the Maryland case last cited, the court said:

"It is too well settled to be disputed that, where a contract not under seal is made with an agent in his own name for an undisclosed principal, either the agent or his principal may sue upon it, the only limitation upon this doctrine being that, if the principal sues upon a contract thus made with an agent in the name of the latter, the defendant is entitled to be placed in the same position, at the time of the disclosure of the principal, as if the agent had been the real contracting party."

In the instant case, it was disclosed during the trial that plaintiff was authorized by his two neighbors to sell their corn; but the defendant did not thereafter amend its pleading in any manner. The defendant was not bound to inquire whether or not plaintiff was acting as agent for another or for himself. If plaintiff wished to avoid personal liability on the contract entered into by him, it was his duty to disclose the agency, for his own protection. *Armour Pkg. Co. v. Vietch-Young Prod. Co.*, (Ala.) 39 So. 680; *Curtis v. Miller*, 73 W. Va. 481 (80 S.

E. 774); 2 Corpus Juris 816, 817. Where an agent acts for an undisclosed principal, he becomes personally bound on the contract. Where a contract is made in the agent's name, and he is individually liable thereon, the liability is *reciprocal,* and the person with whom the contract is made is bound to him for its performance, *unless the principal asserts his rights.* As before stated, the agent acquires no greater rights against the purchaser than if he had contracted for the sale of his own property exclusively. In an action by the agent for an undisclosed principal on a contract made by the agent in his own name, any defense good against the principal, if the action was brought by him, is available against the agent, etc. 2 Corpus Juris 830, and numerous cases cited in the note thereto.

We have seen that plaintiff's two principals knew all about these proceedings, and did not intervene or otherwise assert their rights, as against the defendant. Where there is a contract by an agent in his own name, and the principal is undisclosed, the liability of the agent is not exclusive; and though the third person may have extended credit to the agent in ignorance of the fact that the latter was acting in a representative capacity, he may elect to hold the undisclosed principal, when discovered, the contract having been made by the agent in the line of his employment and pursuant to authority. 2 Corpus Juris 840. As a corollary to the principle that the rights of the other contracting party are not affected by the disclosure of a theretofore unknown principal, it is a well established general rule that, where an agent on behalf of his principal enters into a simple contract as though made for himself, and the existence of the principal is not disclosed, the contract inures to the benefit of the principal, who may appear and hold the other party to the contract made by the agent. By appearing and claiming the benefit of the contract, it thereby becomes his own, to the same extent as if his name had originally appeared as a contracting party; and the fact that the agent has made the contract in his own name does not preclude the principal from suing thereon, as the real party in interest. 2 Corpus Juris 874, citing about 100 cases or more, among which are *Shields v. Coyne,* 148 Iowa 313 (29 L. R. A. [N. S.] 472, and note); *Temple v. Pennell,* 123 Iowa 729; *Young v. Lohr,* 118 Iowa 624; *Darling v. Noyes,*

32 Iowa 96. Under the circumstances, a right of action is in the principal or in the agent, or both, at common law. In some states, the matter is provided for by statute. The majority opinion, under the statute and under the cases cited from this state, concedes this to be the rule, as I understand it. It concedes that plaintiff may sue in his own name. Some cases hold that the action should be brought in the name of the principal as the party in interest. 2 Corpus Juris 895. To the last proposition above stated, there are four generally recognized exceptions which authorize the agent to bring the action in his own name: (1) Where the agent contracts in his own name; (2) where the agent does not disclose the principal, who is unknown; (3) where, by the usages of trade, the agent is authorized to act as owner of the property; and (4) where the agent has an interest in the subject-matter of the contract,—and, in this case, whether he professed to act as agent or not. 2 Corpus Juris 896. All the foregoing exceptions are present in the instant case, except the third, and there is no claim by either party that plaintiff was acting as the owner of the property under trade usages. Because of the nature of the contract, which was a single transaction, there could be no trade usage. Though, as before shown, the plaintiff's principals may have had the right to intervene, they could not do so in such a manner as to defeat any lien or vested interest which plaintiff, the agent, may have had in the subject-matter of the contract. 2 Corpus Juris 900. In the instant case, plaintiff had an interest in the subject-matter, at least to the extent of 2,400 bushels of his own corn; and as I think, and am trying to show by many authorities, he had a right to sue for the entire amount of 6,500 bushels. Though in parol, this was an enforcible contract, provided something was paid as earnest money, or as a part of the purchase price. Had the price of corn gone up, instead of down, it would have been a binding contract, and the defendant could have held plaintiff thereto, regardless of whether plaintiff expected to get some of it from his landlord and brother. As I view it, it was no concern of the defendant's whether plaintiff had bought the corn on credit or paid for it by check, note, or otherwise. Suppose plaintiff had bought the corn outright from his brother and Shoemaker, or contracted to do so, it could not concern

defendant whether plaintiff had paid for it, or how he bought it. Neither is it any affair of the defendant's what becomes of the money, in case of a recovery by plaintiff. If he recovers, he holds it in trust for his brother and his landlord, and it is a matter between plaintiff and them. The agent would be required to account to his principals. It is conceded in the majority opinion that, under the cases therein cited, plaintiff could maintain the action in his own name. The following cases are cited: *Brown v. Sharkey*, 93 Iowa 157; *Gooden v. Rayl*, 85 Iowa 592; *Knott v. Dubuque & S. C. R. Co.*, 84 Iowa 462; *Moorehead v. Hyde*, 38 Iowa 382; *Wells v. Western Union Tel. Co.*, 144 Iowa 605; *Smith & Son v. Bloom*, 159 Iowa 592; *Shields v. Coyne*, 148 Iowa 313. They cite, also, Code Section 3459. Whether plaintiff's brother and landlord could maintain an action against defendant for damages for failure to take their corn, under the contract with plaintiff, is not, as I view it, in any manner in the case. The circumstances are such that, if plaintiff recovers, they cannot now recover from the defendant. By their standing by and participation in the trial, there is an adjudication as to them on that question, even though they are not parties to the suit. They may have had a right to intervene, or to object to plaintiff's maintaining the suit for them; but they did not do so. They were present at the trial, and knew what was going on. So, as said, they would be bound by the judgment in favor of plaintiff. 23 Cyc. 1245, 1249, 1251, 1252, 1253; *McNamee v. Moreland*, 26 Iowa 96; *Stoddard v. Thompson*, 31 Iowa 80. Some of these circumstances are that they authorized plaintiff to sell their corn, and they so testify, as does plaintiff. They went with plaintiff when plaintiff made the tender of all the corn, 6,500 bushels, and they testified as witnesses in this case, without intervening, and without making any objection to plaintiff's maintaining the suit. The other parties were interested in the subject-matter. As between plaintiff and said two other parties, there was privity. The evidence shows, without any dispute, that plaintiff was authorized by the others to sell the corn. Shoemaker, plaintiff's landlord, testifies that he went with plaintiff to defendant's place of business, and that plaintiff, in Shoemaker's presence, told defendant that he was able, ready, and willing to deliver all the corn.

Plaintiff testifies that he was ready, able, and willing to deliver to the defendant, at the time he tendered performance of all the corn, 6,500 bushels. . It was his intention to deliver that amount; and there is no doubt but that, had the defendant accepted the tender, they would have received all the corn. The three parties had the corn, and kept it in readiness for delivery. Plaintiff's corn and the Shoemaker corn were on the Shoemaker farm, about 4,500 bushels; and this was all the corn on the place. Plaintiff's brother lived near. The question was submitted to the jury, by the court's instructions, whether plaintiff was ready, able, and willing to deliver the corn; and as there is no dispute about it in the evidence, the finding of the jury thereon is amply sustained by the testimony. No objection was made by the defendant, at the time of the tender, that plaintiff did not own all the corn, or that he was acting as agent for the others, or that Chester King was not present with plaintiff and Shoemaker at the time of the tender, or that he was unable to deliver it all, or that it was not tendered at the right place, or that it was not tendered in time. It was tendered at defendant's place of business. Section 3063 of the Code provides that:

"The person to whom a tender is made must, at the time, make any objection which he may have to the money, instrument or property tendered, or he will be deemed to have waived it."

After defendant refused to accept the corn when tendered, the plaintiff and the other two, as they had a right to do, sold their corn to other persons. The statute clearly contemplates that a person may make a valid contract to sell personal property, even though he does not own it, or may have thereafter to acquire it or manufacture it,—unless, perhaps, a gambling contract, where there was no intention to deliver the property, but where it was intended to settle the difference. There is no such claim as that in this case. It is true that defendant answered in general denial: that is to say, they denied that there was any contract with plaintiff. But there is no pleading, and they do not claim in any way, that they made such a contract for only the number of bushels owned by the plaintiff. They deny that there was any contract at all, or any valid contract, because no part of the purchase price was paid. The conflict in the evidence on that point is settled by the verdict of the

jury. They do, however, plead the Statute of Frauds, and say only that it was within this statute because no part of the purchase price was paid. That is all there is in the pleadings. There is not a suggestion, even in argument, that the payment was only on plaintiff's corn, or that the contract was separable. Appellant concedes, in argument, that the vital question in the case is whether there had been any payment made on the oral contract for the sale of corn, so as to take the question out of the Statute of Frauds, and the only claim as to that is that the $100 was not paid *at the time* the contract was entered into. It is conceded that the $100 was paid a short time after the contract was made, and long before this action was brought. But the disputed question of fact is whether the $100 was paid on this contract.

It should have been stated before that there was a conflict in the evidence as to the date of the alleged breach of the contract when defendant refused to take the corn, and perhaps as to some other minor matters; but the verdict of the jury is conclusive as to all such questions.

Appellant cites Code Section 4625, Paragraph 1. No other authority is cited by appellant. Two questions, and two only, are presented at this point. One is a question of fact, as to whether the $100 paid soon after the making of the contract was paid on the contract. As to this, there is a conflict in the testimony, which is settled by the verdict of the jury. They also present the law question whether such a payment must be made *at the time* of the making of the contract, or whether the payment may be made thereafter. Appellant contends that a payment thereafter is not sufficient. Statutes in some of the states require that the payment shall be made at the time of the sale or contract to sell. Our statute does not so provide, and the authorities hold that, where no such provision is contained in the statute, the payment need not be made at the time the contract is entered into. There are but few cases on this question, but all the cases decided are that such a payment on the contract is a good payment, and takes the case out of the Statute of Frauds. *Weir v. Hudnut,* 115 Ind. 525; *Driggs v. Bush,* 152 Mich. 53 (15 L. R. A. [N. S.] 654, Note). 25 Ruling Case Law 260; 20 Cyc. 251. As said, defendant concedes *in so many*

*words* that this is the *vital* point in the case. The trial court instructed in accordance with the cases just cited, and the jury found, upon conflicting evidence, that the $100 payment was on the contract. Plaintiff's claim was that the payment was on the contract as a whole. The majority opinion states that it was his intention that the payment should apply upon the purchase price of his own corn, as though it was upon his own corn alone. If there is anything in this record that indicates any such thing, I am utterly unable to find it. It is not even so claimed by appellant. The argument of the majority opinion, I take it, is that, after the $100 payment has been held to apply on plaintiff's share alone, therefore the contract is separable; and that, therefore, it would bar the recovery of damages by Shoemaker or by plaintiff's brother, if they should bring separate actions for their several shares of the corn. How that question gets into the case, I am unable to see. To me, the position of the majority is, at this point, greatly strained. It is said that no cases can be found to sustain such a proposition, but *Burhans v. Corey*, 17 Mich. 282, is thought to be somewhat in point. In that case, the buyer knew that the wool was owned by three different parties, and the transaction was carried on by him directly with the several parties, and the several parties brought actions for damages. This is an entirely different proposition from the one we have presented in the instant case. It is asserted in the majority opinion that, though this contract was apparently entire and indivisible, it was in fact separable. The theory for such a statement is not found in the record. It was one entire contract, entered into by plaintiff, and between the plaintiff and the defendant; and it is none the less an entire contract because, as between plaintiff and his two neighbors, he was acting as their agent for a part of the property. It is again asserted that plaintiff neither owned, sold, nor intended to deliver, 6,500 bushels of corn for himself, and that he expected, without any binding arrangement or contract with them to that effect, that Shoemaker would deliver the balance of the 6,500 bushels upon the contract. Though plaintiff did not own, at the time, all the corn, he did sell and he did intend to deliver 6,500 bushels of the corn for himself, so far as the contract shows, or so far as defendant knew. He did tender the corn,

6,500 bushels; and the evidence is entirely undisputed that he was ready, able, and willing to do so, and that it would have been delivered, had defendant not refused to accept. Defendant's refusal amounted to a repudiation and a breach of the contract. If, at the time of the tender, defendant had accepted the tender, or shown a disposition to do so, it would have been up to the plaintiff to get the corn, or he would have become himself liable to the defendant for a breach. When defendant refused to accept it, and repudiated the contract, surely plaintiff was not required to do anything further, either by way of getting possession of his two neighbors' corn, or taking an assignment from them, or taking any further steps in the matter. Doubtless the real reason for the refusal of defendant was that corn had gone down in price.

It is now argued by appellant that plaintiff was *not entitled to maintain the action,* or to recover for anything except his own corn, *without an assignment from the others.* This is the point made by attorneys for appellant, rather than the matters discussed in the majority opinion. No cases are cited by appellant on this proposition. The question of the agency and of the different ownerships of the corn was brought out only in an incidental way. The defendant did not object to the testimony of Shoemaker or to that of Chester King, in regard to authorizing plaintiff to sell their corn, on the ground that the contract was within the Statute of Frauds, or because plaintiff did not own all the corn. In fact, as to Shoemaker, the matter was first referred to by defendant on cross-examination; then, on reexamination, witness was asked as to whether he had authorized or instructed plaintiff to sell the corn belonging to the witness,— to which defendant itself objected, because "immaterial, incompetent, and *because there was no issue of that character in the case.*"

I have attempted to show that the appellant's own position is that the matter of agency was not in the case. The trial court admitted the evidence just referred to, on the theory, as reflected in the record, that it had a bearing on the question as to whether plaintiff was ready, able, and willing to deliver the entire 6,500 bushels. Defendant now claims that, because of the alleged agency, plaintiff could not deliver the corn.

It is further said in the majority opinion that plaintiff did not engage to deliver the corn for his two principals, or in any way bind them to make such delivery. Whether he did or not seems to me not material in this case. He did himself engage, by the binding contract upon him, to deliver the 6,500 bushels to the defendant, and engaged to bind himself to make such delivery. He tendered the full amount at the proper time and in the proper way, in full performance of his contract. The trial court instructed that, if plaintiff was entitled to recover, he was entitled to recover for the 6,500 bushels. I think I have conclusively shown that there was no dispute in the record as to the number of bushels for which the contract called, and no claim whatever by appellant that the *contract* was for any smaller number of bushels than 6,500. The only thought about it is that the plaintiff himself did not personally own more than 2,400 bushels, and that he was acting as agent for the other two. But no dispute being in the evidence as to the 6,500 bushels contracted for, I think the court properly so instructed.

Thus far, I have noticed some of the matters injected into the case by the majority opinion, and have discussed the case on the theory upon which it seems to have been tried by the court and by all the parties to the action, and upon the theory of the trial in the district court, and the theory of the presentation in this court by the attorneys. Neither side has referred to Chapter 396, Acts of the Thirty-eighth General Assembly, which had been passed prior to and was in force at the time of this transaction. Neither side seems to have noticed this act. As pointed out in the majority opinion, some changes have been made in some of the statutory provisions in regard to the Statute of Frauds. But the act is much more than that, and is comprehensive legislation in regard to uniform sales. The changes may not have been noticed by counsel or by the trial court. However, the plaintiff has, I think, brought himself within the provisions of this new act. I shall not attempt a construction of the provisions thereof, but refer to some of its provisions which, as I think, authorized such a contract as was here made, and authorize a recovery by the plaintiff for the full amount. Section 4, Subdivision 2, of the act recites:

"The provisions of this section apply to every such contract

or sale, notwithstanding that the goods may be intended to be delivered at some future time or may not at the time of such contract or sale be actually made, procured, or provided, or fit or ready for delivery," etc.

Section 5 provides that:

"The goods which form the subject of a contract to sell may be either existing goods, owned or possessed by the seller, or goods to be manufactured or acquired by the seller after the making of the contract to sell," etc.

Paragraph 3 of Section 5 reads that:

"Where the parties purport to effect a present sale of future goods, the agreement operates as a contract to sell the goods."

Section 19, Rule 1, reads:

"Where there is an unconditional contract to sell specific goods in a deliverable state the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed."

Rule 2 reads:

"Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state, the property does not pass until such thing be done."

Section 23, Paragraph 1, provides:

"Subject to the provisions of this act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.

"(2)   Nothing in this act, however, shall affect:

"(a)   The provisions of any factors' acts, recording acts, or any enactment enabling the apparent owner of goods to dispose of them as if he were the true owner thereof.

"(b)   The validity of any contract to sell or sale under any common law or statutory power of sale," etc.

Section 41, in regard to the performance of the contract, provides:

"It is the duty of the seller to deliver the goods and of the buyer to accept and pay for them, *in accordance with the terms of the contract* to sell or sale."

"Section 42. Unless otherwise agreed, delivery of the goods and payment of the price are concurrent conditions; that is to say, the seller must be ready and willing to give possession of the goods to the buyer in exchange for the price and the buyer must be ready and willing to pay the price in exchange for possession of the goods."

Section 43 contains provisions as to the place, time, and manner of delivery. Since there is no question raised on that point in this case, I shall not quote.

Section 51 reads:

"When the seller is ready and willing to deliver the goods and requests the buyer to take delivery, and the buyer does not within a reasonable time after such request take delivery of the goods, he is liable to the seller for any loss occasioned by his neglect or refusal to take delivery, and also for a reasonable charge for the care and custody of the goods. If the neglect or refusal of the buyer to take delivery amounts to a repudiation or breach of the entire contract, the seller shall have the right against the goods and on the contract hereinafter provided in favor of the seller when the buyer is in default."

Section 53 provides:

"(1)   Subject to the provisions of this act, notwithstanding that the property in the goods may have passed to the buyer, the unpaid seller of goods, as such, has— * * *

"(c)   A right of resale as limited by this act."

Section 60 reads:

"(1) * * * where the buyer has been in default in the payment of the price an unreasonable time, an unpaid seller having a right of lien or having stopped the goods *in transitu* may resell the goods. He shall not thereafter be liable to the original buyer upon the contract to sell or the sale or for any profit made by such resale, but may recover from the buyer damages for any loss occasioned by the breach of the contract or the sale."

Other provisions of the same section are to the effect that notice of resale is not necessary; but since no question of that kind is in the instant case, I do not quote.

Section 63 gives the seller a remedy by action for the price, etc., and Section 64 reads:

"(1)    Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for nonacceptance.

"(2)    The measure of damages is estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract.

"(3)    Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances, showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

Section 66 and following sections give the buyer a remedy against the seller for failure to deliver the goods, etc. Section 73 reads, in part:

"In any case not provided for in this act the rules of law and equity, including the law merchant, and in particular the rules relating to the law of *principal and agent* * * * or other invalidating cause, shall continue to apply to contracts to sell and to sales of goods."

Section 76 gives a number of definitions, some of which are:

" 'Divisible contract to sell or sale' means a contract to sell or a sale in which *by its terms* the price for a portion or portions of the goods less than the whole is fixed or ascertainable by computation.

" 'Future goods' means goods to be manufactured or acquired by the seller after the making of the contract of sale.

" 'Goods' include all chattels personal other than things in action and money. The term includes * * * growing crops, etc.

" 'Seller' means a person who sells or agrees to sell goods or any legal successor in the interest of such person.

"(4)    Goods are in a 'deliverable state' within the meaning of this act when they are in such a state that the buyer would, under the contract, be bound to take delivery of them."

There may be other provisions of the Uniform Sales Act

having a bearing; but, because of the somewhat hurried preparation of this dissent, I shall not stop to quote further.

2. It is thought by appellant that the court erred in admitting some of the evidence of plaintiff in the form in which it was offered. One question was permitted as to whether the $100 was paid on the contract. It is thought that this was the conclusion of the witness. Circumstances might be such as that a person might properly state his conclusion. For instance, if the parties had no other dealings with each other, and there was nothing owing plaintiff from the defendant for anything else, there would be no impropriety in stating the fact; though perhaps this is not the better practice. It is difficult, sometimes, to say just what is or what is not a conclusion. *Moyers v. Fogarty,* 140 Iowa 701, 712; *State v. Klute,* 160 Iowa 170, 180; *In re Will of Eveleth,* 177 Iowa 716, 731. Counsel for the opposing party would be entitled to go into details on cross-examination. The record in the instant case is not as broad as the case just supposed. The plaintiff related the conversation, saying:

"I asked him—I went in and asked him when he was going to be ready to take the corn, and he told me the same as he had before. I told him I was kind of hard up, and would like to get some money on the corn. He says, 'We are not disposed to put up anything.' I told him $100 would help me out quite a bit, and he got up and gave me a check for $100."

It is true that, in another part of the examination of plaintiff, he was asked whether defendant's manager paid this money on this contract. There was an objection; but such objection does not include the ground that it called for a conclusion, which is the objection now urged. I think that appellant has no just ground for complaint as to the ruling, and furthermore, that there can be no prejudice. The objection must be specific; and unless it is sufficiently so, it is not error to overrule the objection. *Buettner v. Steinbrecher,* 91 Iowa 588; *State v. Wilson,* 157 Iowa 698, 713; *Puth v. Zimbleman,* 99 Iowa 641, 647. There was no error in this ruling.

3. A similar question was asked of defendant's manager, who paid the check; and the objection was sustained. The witness had stated that he was not sure whether or not there was anything said by plaintiff, at the time in question, to the effect

that the $100 was being paid on the corn. In ruling, the court stated that the witness might state what the conversation was; and this the witness did, so far as he was able to remember. Furthermore, the objection in this instance was specific, and on the ground that it called for a conclusion. Clearly, there was no error in this ruling.

I have noticed all questions which are presented and are at all controlling, and a number of other questions which I have tried to show are not in the case. On the whole record, I think there is no prejudicial or reversible error. I would affirm.