# CHARLESTON.

## CURTIS v. MILLER.

Submitted January 6, 1914.    Decided January 14, 1914.

1. PRINCIPAL AND AGENT—*Transactions of Third Persons—Liability of Agent.*

     One who performs services at the request of an agent, who fails to disclose his principal for whom the request is made, may recover of the agent therefor. (p. 482).

2. SAME—*Transactions With Third Person—Failure to Disclose Principal—Liability of Agent.*

     If an agent would avoid personal liability, the duty is on him to

disclose his principal, and not on the party with whom he deals to discover him . (p. 482).

(POFFENBARGER, PRESIDENT, dissenting.)

Error to Circuit Court, Raleigh County.

Action by W. A. Curtis against S. M. Miller. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Vinson & Thompson,* for plaintiff in error.

*Williams, Stansbury & Scott,* for defendant in error.

WILLIAMS, JUDGE:

In an action of assumpsit upon the common counts, plaintiff recovered a judgment, on a demurrer to evidence, and defendant was awarded this writ of error. The action is on an account for surveying land at the request of defendant. The defense is, that defendant, as agent for a principal known to plaintiff, directed the work to be done, and that he is not personally liable therefor. Hatcher & McGinnis, a law firm at Beckley, engaged plaintiff to do certain surveying, through plaintiff's father as his agent. Plaintiff's father testified that, in his conversation with Mr. Hatcher about the work, he got the impression that defendant was having the work done for the Crab Orchard Improvement Company. He does not say that Mr. Hatcher told him that that company was having the work done. But he does say that Mr. Hatcher told him to have the bill for the work made out against Mr. S. M. Miller, the defendant. A portion of the work was done, and the bill for it made out as directed. There was some delay in the payment of the bill, and it was finally paid by the Crab Orchard Improvement Company, but not until plaintiff had gone to see defendant about it. That visit was made before the work was done for which this suit is brought. Plaintiff testified that, in the conversation that then took place, Mr. Miller said that the reason the bill had not been paid was that it had been mislaid, and further said, quoting the language of witness, "I will see that you get your money in a few days. I want you to go right on and finish up the work, and I will see that you are not delayed in getting your money for your next work."

He also says that Mr. Miller did not inform him for whom he was having the work done, and that he was induced, by Mr. Miller's promise, to go on and complete the work. The record does not disclose that plaintiff knew that defendant was acting as agent for the Crab Orchard Improvement Company in employing him. But it is argued that plaintiff must have known of the agency from the fact that the bill first rendered was paid by said company. That bill, however, was not paid until after plaintiff had the conversation with Mr. Miller, in which he directed him to complete the work. To collect that bill was the occasion of his visit to Mr. Miller. Plaintiff says that defendant then assured him that he would not be delayed in getting his money the next time, and requested him to finish the work. Plaintiff's testimony is not contradicted, and in view of it, we think it is properly inferable that defendant, in requesting him to complete the work, was acting for himself, or for an undisclosed principal. And the law is, that where an agent contracts on behalf of an undisclosed principal, whether acting within his authority or not, he makes himself liable, and if the contract is within his authority, both principal and agent are liable, and the contractee may, on discovering the principal, sue either. The impression that plaintiff's father may have gotten from conversation with Mr. Hatcher is not sufficient evidence that he, as agent of his son, knew that defendant was acting as agent of the Crab Orchard Improvement Company. It is not enough that plaintiff may have had knowledge which caused him to suspect the agency. If defendant wanted to escape personal liability, it was his duty to disclose his principal in some unmistakable manner, in order that plaintiff might know to whom to look for his pay. "The duty is upon the agent, if he would avoid personal liability, to disclose his agency, and not upon others to discover it, and if he fails so to do, and deals with persons unaware of his agency, he must answer personally for the liabilities he contracts; and if he does not make such a disclosure the presumption is that he intended to bind himself personally." 2 Clark & Skyles on Agency, sec. 568c.

"A person contracting as agent will be personally responsible, where, at the time of making the contract, he does not

disclose his agency; and in such case the principal is also responsible.'' *Poole & Co.* v. *Rice,* 9 W. Va. 73.

''The fact that the agent discloses the circumstance that he is acting as an agent for another does not relieve him from liability if he does not disclose who that other is; in such cases, if the terms of the contract are sufficient to bind him, the agent will generally be treated as the principal, and be held personally liable on the contract, to the same extent as if he were the real instead of the ostensible principal, unless it clearly appears that the intention was to contract as agent only, and that the other party so understood; though he afterwards discloses the principal's name.'' 2 Clark & Skyles on Agency, sec. 569.

Defendant offered no testimony, and, upon the demurrer to evidence, we must give plaintiff's testimony all the credence that a jury could have given it, and we must consider all fair and reasonable inferences that may be drawn from it. In other words, we must consider the case, as upon a motion to set aside a verdict rendered upon the evidence. So considering it, we think it can fairly be inferred that defendant designedly concealed his principal, if he acted as agent.

That the labor was performed and the charges therefor are reasonable are not denied. We think the testimony of plaintiff proves a request by defendant of plaintiff to do the work, the price of which is sued for, made either on his own account, or for an undisclosed principal, and for the purpose of this case it matters not which, and that, upon such request, the law raises an implied promise by defendant to pay what the services are reasonably worth.

The judgment is affirmed.

*Affirmed.*

POFFENBARGER, PRESIDENT, *(dissenting):*

On a demurrer to evidence, the plaintiff recovered a judgment for $533.00 for services and expenses as a surveyor. The evidence is meager and somewhat indefinite. For the purposes of the case, the work for which the charge was made must be regarded as having been done and the value thereof proven, but the liability of the defendant, an agent of the beneficiary of the service, is denied. Plaintiff's father

obtained the work for him through the law firm of McGinnis & Hatcher, who told him Miller, the defendant, wanted the work, that it would be paid for, that Miller was the agent, and that there was "a company behind it" with a million dollars worth of real estate, and Mr. Hatcher left the impression on his mind that the company was the Crab Orchard Improvement Company. He saw them about the work three times. He never saw Miller about it at all until after a good part of the work had been done, for which a bill had been made off against Miller by direction of McGinnis and Hatcher. The young man, the plaintiff, made no contract for the work with anybody. As the bill rendered Miller was not promptly paid, he quit work and called upon Miller about the unpaid bill. Miller said the bill had been mislaid and would be hunted up and soon paid and requested that the balance of the work be done. His language as given by the witness was "You will get—I will see that you get your money in a few days. I want you to go right on and finish up the work, and I will see that you are not delayed in getting your money for your next work." The bill was soon afterwards paid by the Crab Orchard Company. After the remainder of the work was done, plaintiff and his father sued that company for their bill for services and expenses, but failed to recover for some reason not disclosed.

Miller's agency was known when the work was taken and he made no contract. The authority of McGinnis and Hatcher to make one for him as his agent is not shown. He never paid the bill made off against him by their direction. It was paid by the company, disclosed as Miller's principal at the date on which the work was ordered to be done. Payment of that bill by the company was a disclosure of the principal before the last work, that for which recovery has been had here, was done. Miller's language quoted by the witness expresses no personal promise to pay. If it imposed any obligation it was one of guaranty. Moreover, it impliedly said "You are working for my principal, not for me." There is no evidence that Miller was the beneficiary of the work, so as to raise an implied promise on his part. Nor is there any evidence of lack of authority in him to have the work done.

A finding against Miller's agency could not properly be

permitted to stand. Nor could a finding that his principal was not disclosed. It was disclosed to plaintiff's father at the very inception of the contract and again when the principal paid the bill for the first part of the work. Nor could a jury be permitted to say Miller promised to pay for the work. He never paid the bill rendered in his name.

If a person claiming to be an agent, but having no authority, attempts to make a contract in the name of another, or, having limited authority, attempts to bind his principal by a contract in excess of his powers, he is liable, but not on the contract as his own. He is liable either for fraud and deceit in the false representation that he had authority, or for breach of his warranty that he had, a tort in the former case and a breach of contract in the latter, but he is not liable as upon the contract he attempted to make. Clark & Skyles on Agency, sec. 586. If we could say Miller attempted to make the contract sued on for the Crab Orchard Improvement Company and was not authorized to do so, there could be no recovery against him in this action, for the declaration contains only the common counts. The action being in assumpsit, he could not be charged in it as for a tort, and no common count will sustain a recovery for a breach of warranty. The warranty would have to be set out and the breach and resulting damages alleged. So liability upon this ground may be dismissed as unfounded without further discussion or inquiry.

The instances above given are the only ones in which an agent is liable in any form, except in cases of fraud, upon contracts made in the name of his principal. But he may be liable, although a duly authorized agent and acting for his principal, upon contracts made in his own name, but, to make him liable in such cases, he must contract in his own name. Take, first, the case of an agent contracting for an undisclosed principal. "It is a well settled rule, therefore, that where an agent conceals the fact of his agency and enters into a contract in his own name as the ostensible principal, he may be treated as the principal by the party with whom he deals, and may be held liable on the contract to the same extent as if he were in fact the principal in interest." Clark & Skyles Agency, sec. 568. Note that he must contract in his own name. If he contracts in his own name, disclosing his

principal, he is not personally liable, unless the credit was extended to him or he expressly agreed to be liable. *Johnson et al* v. *Welch et al,* 42 W. Va. 18. Whether he has sufficiently disclosed the principal or whether credit was extended to him is often a question for the jury, but this is a subsidiary question, not dispensing with the essential premise that the agent must have contracted in his own name. Clark & Skyles Agency, secs. 568, 568a, 568b, 568c. "This rule does not apply, however, unless the agent expressly binds himself, where the party dealing with him has knowledge of the agency or of circumstances which, if inquired into, would have disclosed the principal." *Id.* sec. 568d. If he contracts in his own name, but discloses the agency and the name of his principal, or facts enabling the party with whom he is dealing to identify the principal, he is not personally liable. But if he goes further and expressly agrees to be personally liable, or he was notified that the credit was extended to him and not the principal, then he is personally liable. In all such cases, however, it is essential that the contract be made in his own name. Of course he may make himself a guarantor of his principal's obligation, but that is a different question, and one not here involved, for Miller is not sued as a guarantor. He is sued on the contract itself without a shadow of proof that he ever made it in his own name, and, if he had so made it, the name of his principal was fully disclosed, both in the first instance and subsequently before the work here sued for was done, by the Crab Orchard Company's payment of the bill for the first part of the work.

Recurring to the evidence, I find nothing in words or conduct from which a jury could infer an unconditional promise on the part of Miller to pay for the work. Neither the plaintiff nor his father had any conversation at all with him about it until more than half the work had been done. It was actually ordered by McGinnis and Hatcher. There is no evidence that Miller got the benefit of the work. Facts were disclosed by McGinnis and Hatcher sufficient to enable Curtis to ascertain the name of the principal, if indeed they did not actually give the name. Curtis says he got the impression from them that it was the Crab Orchard Improvement Com-

pany, and that company actually paid the bill for the first part of the work.

In my opinion, there is clearly no right of recovery against Miller, and I, therefore, dissent.