## DODGE *v.* BLOOD.

1. APPEAL AND ERROR—EQUITY—MOTION TO DISMISS—EVIDENCE.
    On appeal from order granting motion to dismiss in nature of demurrer, the allegations of fact contained in a bill of complaint must be taken as true.

2. SAME—QUESTIONS REVIEWABLE—CONSTRUCTION OF TWO INSTRUMENTS AS ONE MEMORANDUM.
    Whether or not broker's confirmation of sale to plaintiff and its confirmation of purchase to defendant should be construed together as one document, a single memorandum, identifying both principals by name, is not considered where the question was not included in the "reasons and grounds of appeal" and decision thereof is unnecessary in the disposition made of the case (Court Rule No. 66, § 3 [1933]).

3. FRAUDS, STATUTE OF—SUFFICIENCY OF MEMORANDUM.
    A memorandum is insufficient under the statute of frauds if it fails to state any element essential to the contract it purports to evidence (2 Comp. Laws 1929, § 9443).

4. SAME—CONTRACT OF SALE—VENDORS.
    To make a memorandum of a contract of sale sufficient under the statute of frauds, it is indispensable that there be a statement as to who is the vendor (2 Comp. Laws 1929, § 9443).

5. PRINCIPAL AND AGENT—DEFINITION OF DISCLOSED PRINCIPAL.
    If, at the time of a transaction conducted by the agent, the other party thereto has notice that the agent is acting for a principal and of the principal's identity, the principal is disclosed.

6. SAME—DEFINITION OF PARTIALLY DISCLOSED PRINCIPAL.
    If, at the time of a transaction conducted by the agent, the other party has notice that the agent is or may be acting for a principal but has no notice of the principal's identity, the principal for whom the agent is acting is partially disclosed.

7. SAME—DEFINITION OF AN UNDISCLOSED PRINCIPAL.
    If, at the time of a transaction conducted by the agent, the other party has no notice that the agent is acting for a principal, the principal is undisclosed.

8. SAME—STOCKBROKERS' CONFIRMATION OF SALE—PARTIALLY DIS-
CLOSED PRINCIPAL.

Stockbrokers' confirmation of sale to plaintiff of a certain num-
ber of shares of stock in a named corporation at a given price
"as agents for an undisclosed principal" had the effect of
making the defendant vendor a partially disclosed principal.

9. FRAUDS, STATUTE OF—SALE OF STOCK—STATUS OF PRINCIPAL—
MEMORANDUM.

In suit for specific performance of a contract for the sale of
certain shares of stock, the status of the principal as dis-
closed, partially disclosed, or undisclosed is to be determined
entirely from what appears in the memorandum of sale where
the statute of frauds is involved, as actual knowledge by the
other party is no substitute for disclosure in the memorandum
(2 Comp. Laws 1929, § 9443).

10. COURTS—CASE OF FIRST IMPRESSION.

In a case of first impression the Supreme Court is at liberty to
follow the dictates of principle, enlightened by experience as
embodied in precedents from other jurisdictions.

11. FRAUDS, STATUTE OF—SUFFICIENCY OF MEMORANDUM OF SALE—
NAMING OF PARTIES.

A memorandum of sale in order to satisfy the statute of frauds
must state the substance of the transaction to which it relates,
hence must state the names of both parties to the bargain or
their agents and it is immaterial that a memorandum par-
tially disclosing the principal and naming his agent as one
of the contracting parties is so worded as to exclude agent
from personal liability (2 Comp. Laws 1929, § 9443).

12. SAME—SUFFICIENCY OF MEMORANDUM SIGNED BY AGENT.

For the purpose of satisfying the provisions of a statute re-
quiring a note or memorandum to be signed by the party to
be charged or by his agent, a memorandum signed by a prop-
erly authorized agent with or without indication of the exist-
ence or identity of the principal is sufficient to charge the
principal (2 Comp. Laws 1929, § 9443).

13. SAME—SUFFICIENCY OF MEMORANDUM—AGENT AS A PARTY—IN-
FERENCES.

In considering the sufficiency of a memorandum of a contract of
sale to satisfy the statute of frauds, the inference of an under-
standing that an agent is a party to the contract exists unless
the agent give such complete information concerning his prin-
cipal's identity that he can be readily distinguished.

14. PRINCIPAL AND AGENT—MEMORANDUM OF CONTRACT—IDENTITY OF PRINCIPAL—AGENT AS PARTY.

     If a contract with a third party is negotiated by an agent and is evidenced by a memorandum which fails to disclose the identity of the principal and the other party has no reasonable means of ascertaining the principal, the inference that the agent is a party to the contract is almost irresistible and prevails in the absence of an express agreement to the contrary.

15. EQUITY—DEMURRER—PLEADING.

     Upon motion to dismiss in nature of demurrer, every inference must be indulged in favor of the pleader and against the demurrant.

16. SPECIFIC PERFORMANCE—CONSTRUCTION OF PLEADING—MOTION TO DISMISS.

     In suit for specific performance of an alleged contract for the sale of certain corporate stock wherein defendant filed a motion to dismiss in the nature of a demurrer, dismissal of the bill upon the ground that it and its exhibits state no contract would necessitate holding that there is no explanation that can be placed upon the pleading that is consistent with a contract.

17. WORDS AND PHRASES—CONFIRMATION.

     The word confirmation points retrospectively to something done and finished in the past and has not the force of adoption, ratification, or acceptance.

18. BROKERS—CONFIRMATION OF SALE OR PURCHASE—CONTRACTS.

     Stockbroker's memorandum of contract of sale or purchase reading ''We are pleased to confirm'' sale or purchase to or by addressee and closing with a request that the addressee sign such memorandum constitutes a completed contract with either the vendor or buyer where the broker was duly authorized by the principal.

19. PLEADING—BROKER'S AUTHORITY TO CONTRACT.

     Allegation of bill for specific performance of contract for sale of certain corporate stock that a named stockbroker was employed to negotiate sale to plaintiff of the stock properly alleged authority on part of broker to conclude a completed contract.

Appeal from Wayne; Maher (John J.), J., presiding. Submitted June 4, 1941. (Docket No. 67, Calendar No. 41,639.) Decided October 6, 1941. Rehearing denied January 6, 1942.

Bill by C. Gerard Dodge against Howard E. Blood for specific performance of a contract for the sale of corporate stock. Bill dismissed. Reversed and remanded for further proceedings.

*Miller, Canfield, Paddock & Stone,* for plaintiff.

*Leo W. Kuhn,* for defendant.

BUTZEL, J. Plaintiff sues in equity for specific performance of a contract. His bill of complaint was demurred to, and dismissed, and he appeals. The allegations of fact contained in the bill must, therefore, be taken as true. Insofar as such allegations relate to the circumstances surrounding the making of the contract sued on, they are as follows:

"4. On October 15, 1940, at New York, plaintiff employed the services of * * * First of Michigan Corporation to negotiate sale to him by defendant of 63 shares of the capital stock of S. A. Woods Machine Company. * * *

"5. On October 16, 1940, at Detroit, defendant agreed to sell to said First of Michigan Corporation as agent for an undisclosed principal 63 shares of the capital stock of said S. A. Woods Machine Company, at a price of $105 per share.

"6. On October 16, 1940, said First of Michigan Corporation, with the knowledge and consent of defendant and on his behalf, executed and delivered to plaintiff a written confirmation of such sale, a copy of which, marked Exhibit A, is attached to this bill of complaint and made a part of it, and at the same time on behalf of plaintiff executed and delivered to defendant a written confirmation of said sale, a copy of which, marked Exhibit B, is attached to this bill of complaint and by this reference made a part of it.

"7. On October 17, 1940, defendant advised said First of Michigan Corporation that he believed he

had a defense to any action to enforce his contract to sell said shares of stock and that sale of said shares of stock would embarrass his relations with members of his family who held other shares of said stock, and then and at all times since that date defendant has failed and refused to deliver said shares of stock, though often requested so to do.''

Plaintiff states that his remedy at law is inadequate because ownership of these 63 shares would give him and his brother together practical control of the corporation.

Exhibit ''A'' reads as follows:

''FIRST OF MICHIGAN CORPORATION
''October 16, 1940.

''Mr. C. Gerard Dodge,
20 Exchange Place,
New York City.

''*Dear Sir:*
''We are pleased to confirm sale to you today, by our representative, Mr. Warren J. Hoysradt, as agents for an undisclosed principal, of—
''63 shares S. A. Wood Company capital stock
        at $105 a share plus $2 a share commission.
''For delivery Monday, October 21, 1940.
''No information was given by us in connection with this transaction, except to identify the security and state the price.
''Thanking you for this business, we are
''Yours very truly,
''FIRST OF MICHIGAN CORPORATION.
''By ADRIAN G. FRANCIS,
''Per pro
AGF:mhs        ''Vice President.
''We confirm the above in accordance with our understanding. ———————————
(Please sign and return this copy)
''Approved———————————.''

Exhibit B was in substantially identical terms, but addressed to Blood at Detroit, and confirmed purchase from, rather than sale to, the addressee.

Defendant moved to dismiss the bill of complaint on the ground that the contract therein set forth is unenforceable under the statute of frauds:

"A contract to sell or a sale of any goods or choses in action of the value of $100 or upwards shall not be enforceable by action, unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged, or his agent in that behalf." 2 Comp. Laws 1929, § 9443 (Stat. Ann. § 19.244).

Plaintiff relies on Exhibit "A" as a sufficient memorandum signed by First of Michigan Corporation, as agent for defendant Blood, the party herein sought to be charged, to take the contract evidenced thereby out of the statute. In his brief and statement of questions involved, plaintiff also advances the alternative argument that Exhibits "A" and "B" may be integrated, construed together as one document, a single memorandum, identifying both principals by name. We shall not consider this question, as it was not included in the "reasons and grounds of appeal" (as Court Rule No. 66, § 3 [1933], requires), and furthermore, in the disposition which we make of the case, it will be unnecessary to consider it. We confine our attention to Exhibit "A."

Defendant contends that Exhibit "A" is insufficient as a memorandum because it does not identify him as the vendor. It is well settled that a memorandum is insufficient if it fails to state any element

essential to the contract it purports to evidence, and concededly a vendor is indispensable in a contract of sale.

The trial court granted defendant's motion to dismiss on the ground that Exhibit "A" is not a sufficient memorandum, and also upon an additional ground, which we shall discuss later. Before proceeding to discuss the merits of the dismissal on the ground of insufficiency of memorandum, we propose to clarify our discussion by adopting the following definitions of the terms *disclosed principal, partially disclosed principal,* and *undisclosed principal,* which the American Law Institute has promulgated in 1 Restatement, Agency (1933), § 4:

"(1) If, at the time of a transaction conducted by the agent, the other party thereto has notice that the agent is acting for a principal and of the principal's identity, the principal is disclosed.

"(2) If the other party has notice that the agent is or may be acting for a principal but has no notice of the principal's identity, the principal for whom the agent is acting is partially disclosed.

"(3) If the other party has no notice that the agent is acting for a principal, the principal is undisclosed."

Exhibit "A," by referring to "an undisclosed principal" (*i.e.,* Blood), had the effect of making Blood a partially disclosed principal, since it revealed his existence to, but concealed his identity from, the "other party" (*i.e.,* Dodge).

In the present opinion, we determine the status of a principal as disclosed, partially disclosed, or undisclosed, entirely from what appears in the memorandum, since the statute of frauds is involved, and actual knowledge by the other party is no substitute for disclosure in the memorandum (*Jarrett* v. *Hunter,* L. R. 34 Ch. D. 182, 185 [56 L. J. Ch. 141, 55 L. T. 727, 35 W. R. 132, 51 J. P. 165]).

No Michigan decision has been produced by counsel or discovered by us in which the precise question presented on this appeal was raised or passed upon. The case being one of first impression, we are at liberty to follow the dictates of principle, enlightened by experience as embodied in precedents from other jurisdictions, which we have examined with care.

The rule of the decided cases is well expressed by the following quotations from Williston on Sales (2d Ed.) (1924), chap. 5 (Satisfaction of the Statute [of Frauds] by a Memorandum in Writing):

"§ 102.   Contents of Memorandum—Parties.

"It is essential that the memorandum state the substance of the transaction to which it relates. It is necessary, therefore, that the memorandum state the name of both parties to the bargain. * * * By a liberal application of the legal rule identifying the principal with his agent, the name of one or both of the contracting parties may be represented by that of an agent, and such a memorandum will bind the principals. But it is essential that by the terms of the memorandum either the principal or the agent be named as a party. If the agent by the terms of the memorandum is contracting in such terms as exclude him from personal liability, the memorandum is insufficient. * * *

"§ 105a.   Certainty of description of parties.

"It is within the principle allowing definition of terms, that a memorandum which names A as one of the parties to the transaction, sufficiently designates B when the latter is shown by parol to be A's principal. * * * The same doctrine is applicable even though the memorandum discloses the agent is an agent, provided the form of the contract purports to bind him personally. If, however, the agent's name appears on the paper, not as that of a contracting party, his name will not serve as a substitute for the name of his principal as a party to the contract."

The following decisions amply support the foregoing text: *Lovesy* v. *Palmer,* L. R. 2 Ch. (1916) 233, 243, 244 (85 L. J. Ch. 481, 114 L. T. 1033) ; *Mertz* v. *Hubbard,* 75 Kan. 1, 5 (88 Pac. 529, 8 L. R. A. [N. S.] 733, 121 Am. St. Rep. 352, 12 Ann. Cas. 485) ; *Tobin* v. *Larkin,* 183 Mass. 389, 391 (67 N. E. 340) ; *Irvmor Corporation* v. *Rodewald,* 253 N. Y. 472, 475, 476 (171 N. E. 747, 70 A. L. R. 192) ; *Bradley* v. *Elliott,* 11 Ont. L. R. 398, 399, 400. Many cases are collected in 23 A. L. R. 932–943. We summarize the rules deducible from all these authorities as follows:

1. If a memorandum (1) is signed by an agent in his own name, (2) partially discloses a principal, (3) does not purport to bind the agent as a party to the contract, the statute requires the exclusion of parol evidence of the identity of the partially disclosed principal.

2. If a memorandum (1) is signed by an agent in his own name, (2) partially discloses a principal, (3) purports to bind the agent as a party to the contract, the statute does not prevent the admission of parol evidence of the identity of the partially disclosed principal.

3. If a memorandum (1) is signed by an agent in his own name, (2) leaves any principal other than the signer wholly undisclosed, (3) the legal consequence being that the agent is bound as a party to the contract, the statute does not prevent the admission of parol evidence of the undisclosed principal's existence and identity.

The latest and most eloquent expression of the distinction between cases 1 and 2 appears in the opinion of Chief Judge Cardozo in *Irvmor Corporation* v. *Rodewald, supra,* 475:

"There is a settled rule of law that a note or memorandum of a contract for a sale * * * must

identify by name or description the parties to the transaction, a seller and a buyer. * * * If this is done, the memorandum does not fail of its effect though one who is described as principal or who assumes a principal's obligation is in truth an agent only. * * * Essential it remains, however, that the agent shall bind himself as principal, if the writing does not identify the principal behind him. The memorandum may be adequate though the agent is described as agent 'provided the form of the contract purports to bind him personally' (Williston on Sales, §§ 105a, 102). So at least we may assume. The memorandum is inadequate where by its terms the principal is not identified, and the agent, though his name is on the paper, is not there as a contracting party.''

Courts have been content to draw without explaining this distinction, leaving obscure the reason for rules that are themselves quite clear. The only attempt to articulate the reasoning on which rules 1 and 2 are based which we have been able to find was made by Justice Younger in *Lovesy* v. *Palmer, supra,* 243, 244, where he wrote:

''And I have looked for, but I have been unable to find, any * * * case where it has even been suggested that an unnamed principal can sue or be sued on a contract to which the statute applies where he is not himself sufficiently described in the memorandum, except in a case where by the memorandum the agent is himself liable on the contract. And I should not expect to find any such authority, because it appears clear that, unless the agent is liable on the contract, you can on the hypothesis have no memorandum of any *agreement* at all.'' (Italics Justice Younger's.)

''As to a third person with whom an agent has contracted * * * for an undisclosed principal, the principal and agent are not jointly liable, nor are

they, in a strict sense, severally liable. Their liability is an alternative one'' (*Old Ben Coal Co.* v. *Universal Coal Co.*, 248 Mich. 486, 490), depending upon which of the two the third person elects to hold liable. The same is true of the liability of an agent and his partially disclosed principal, where the contract does not exclude the liability of either (*Byington* v. *Simpson*, 134 Mass. 169 [45 Am. Rep. 314]).

The specious nature of the reasoning advanced to justify the rules appears when what is said in their behalf receives close scrutiny. Sufficiency depends, we are informed, upon the memorandum's stating all the elements of some contract. A memorandum which names but one obligor, and on the other part declares there is an unnamed obligor, on whose behalf an unbound agent signs his own name, never satisfies the test laid down. A memorandum slightly different, which names two obligors, but designates one as agent for an unnamed principal, alternatively bound, would seem to satisfy the test. But we are persuaded, after consideration of the applicability of the principles of substantive agency law stated in the next preceding paragraph, that the second of the two supposed memoranda is really no better than the first, judging them by Justice Younger's test, which we adopt only for the purpose of argument. It is true that the second memorandum begins its history by stating the elements of (including two parties to) a contract, namely, the contract between the third person and the agent. No one would question the sufficiency of the second memorandum as evidence of that contract. But should the third person elect to discard that contract, and sue upon another, namely the contract between himself and the principal, the theory of his suit must be that the latter contract stands, the former disappears. We are aware that his election is not final and irrevo-

cable until he has obtained judgment against the principal, but while he pursues his suit against the principal, he cannot be permitted to regard the alternative contract with the agent as still subsisting. To hold the second memorandum sufficient to justify admission of parol evidence to turn it into a memorial of the contract with the principal, it is necessary to ignore the fact that under the theory upon which the third person has brought suit, there is no subsisting contract of which the memorandum can be an adequate memorial, unless parol evidence be first admitted to add an unnamed obligor, and, by the test, the sufficiency of the memorandum is supposed to be a condition precedent to the admission of parol evidence, rather than the result of the admission of such evidence. We do not endeavor to criticize admission of parol evidence in cases involving memoranda of the second type; we do criticize rejection of such evidence in cases involving memoranda of the first type, because we believe that the rule distinguishing between the two types of memoranda is unsound.

Rules which lead to such enigmatic anomalies may well intrigue the scholar and adorn his treatises, but serve only to baffle businessmen, who are expected to abide by them, and, in the language of appellant's brief, make "important rights turn upon an accident of phraseology which bears no relation to the purpose which underlies the statute of frauds." Parol evidence to identify a partially disclosed principal is no more inherently reliable where the agent-signer once was, but (since the election by the third party to hold the principal) is no longer, bound, than where he was never bound at all. Even judges who feel bound to follow the rules we criticize complain that the "subject is somewhat shrouded in metaphysical nicety of distinction" (*Follender* v.

*Schwartz,* 107 N. J. Eq. 451, 452 [151 Atl. 55]),
and we do not propose to join their ranks.

The American Law Institute, in formulating its
Restatement of the Law of Agency, has made a com-
mendable effort to restate a complicated branch of
jurisprudence with conciseness, coherence and com-
pleteness. The committeé responsible for drafting
it is composed of many able judges and jurists, and
their considered, combined opinion should carry
great weight with every court. Touching the subject
under discussion, they have done away with the
artificial distinction between case 1 and cases 2 and
3 in a single, succinct paragraph, 1 Restatement,
Agency, § 153:

"For the purpose of satisfying the provisions of
a statute requiring a note or memorandum to be
signed by the party to be charged or by his agent,
a memorandum signed by a properly authorized
agent with or without indication of the existence or
identity of the principal is sufficient to charge the
principal."

In the only case decided since the publication of
the Restatement which deals with the question in-
volved (*Estate of Kaiser: Krause* v. *First Wis-
consin Trust Co.,* 217 Wis. 4, 8 [258 N. W. 177]),
Chief Justice Rosenberry, who is a member of the
American Law Institute committee which drafted
the Restatement of Agency, quotes and announces
the complete adherence of the supreme court of
Wisconsin to the principles of section 153, although
it is claimed that the adoption of the Restatement
rule in that particular case was dictum. In the
instant case, the question is squarely before us.

In the case at bar, we adopt the Restatement rule,
founded on common sense and justice, whereby, in
the case of a memorandum partially disclosing a

principal, it makes no difference whether the agent-signer was bound as a party or not. This obviates the necessity of determining whether First of Michigan Corporation is bound or not. We note in passing, however, that it probably is bound, so that we would have reached the same result under the pre-Restatement rule as we have under the Restatement. Authority for the proposition that an agent purporting to make a contract with another for a partially disclosed principal is a party to the contract may be found in *Abgersinger* v. *MacNaughton,* 114 N. Y. 535, 539, 540 (21 N. E. 1022, 11 Am. St. Rep. 687); *Pennsylvania Railroad* v. *Rothstein & Sons,* 109 Pa. Super. 96, 105 (165 Atl. 752); *Reading Co.* v. *Sobelman,* 144 Pa. Super. 270 (19 Atl. [2d] 754, 757); Mechem on Agency (2d Ed.) (1914), § 1411; 2 Restatement, Agency, § 321, and accompanying comment. See our own language in *Harmon* v. *Parker,* 193 Mich. 542, 545, 546, where we quote Mechem (2d Ed.), § 1413, with approval. See, also, our dicta in *Preston* v. *Preston,* 1 Doug. (Mich.) 292, 293, and *Banks* v. *Cramer,* 109 Mich. 168.

"The inference of an understanding that the agent is a party to the contract exists unless the agent gives such complete information concerning his principal's identity that he can be readily distinguished. If the other party has no reasonable means of ascertaining the principal, the inference is almost irresistible and prevails in the absence of an express agreement to the contrary." 2 Restatement, Agency, § 321, Comment.

The good sense of such a rule requires no elaboration.

Though the same result could have been reached by us had we seen fit to adopt the rules announced before publication of the Restatement and applied

them to this case, we wish to be understood, for future guidance of the profession, to have adopted the Restatement rule as the *ratio decidendi* of this case.

In his opinion the trial judge relied also upon another ground, independent of the statute of frauds, for dismissing the bill, namely, that the bill and exhibits show that no final contract was entered into by the parties, but that all that took place was the making of an offer to sell by Blood to Dodge through First of Michigan Corporation, followed by a revocation of said offer by Blood through the same channel one day later, and a subsequent attempt by Dodge to accept the offer, after it had been withdrawn. The language in the exhibits which led the lower court to this conclusion is in the closing lines of the letters, in which First of Michigan Corporation, after signing its name, requests the addressees to sign and return the copies sent them, signing their names under the words: "We confirm the above in accordance with our understanding." The trial judge felt that the effect of the inclusion of such a confirmation-request was to make the entering upon contractual obligations abide signature by the addressees. To this we cannot lend assent. Upon demurrer, every inference must be indulged in favor of the pleader, and against the demurrant. This means that in order to justify dismissal of the bill upon the ground that it and its exhibits state no contract, we must be prepared to hold that, as a matter of law, there is no explanation that can be placed upon the pleading that is consistent with a contract. Viewing the particular objection made by the trial judge, we cannot go so far. The explanation which he gives of the inclusion of the confirmation-request is indeed inconsistent with the notion of completed contract, but it is not the

only, nor, in our opinion, the most reasonable ex-
planation that can be given. First of Michigan
Corporation, at some time before delivery, scheduled
for October 21, 1940, would have to advance over
$6,000 to Blood on account of Dodge, in order to
get possession of the stock certificates. It was but
the part of prudence for it to require that Dodge
confirm in writing the arrangement he had made.
Should Dodge renege, First of Michigan Corpora-
tion would have encountered greater difficulty in
proving and enforcing its claim against Dodge for
reimbursement without, than with, signed and writ-
ten evidence. Besides, the word "confirm" itself
points retrospectively to something done and
finished in the past. Confirmation is not initiation,
inauguration, commencement. It has not the force
of adoption, ratification, or acceptance. We note
that the word "confirm" was twice used in each
letter: first in the opening sentence, in which First
of Michigan wrote, "We are pleased to confirm sale
to you (or purchase by you);" and last in the con-
firmation request to be signed by the addressee. It
is not pretended that the word has any but a repor-
torial sense in the opening sentence; it would be a
strained construction that would put any different
sense upon it in the closing one.

Counsel for defendant emphasize that the bill
states that Dodge employed First of Michigan "to
negotiate sale" to him (Dodge) of the stock, and
argue that this means that the agent's authority
was confined to procuring an offer to sell. We can-
not imagine words in English more efficacious to
empower an agent to conclude a completed contract
than those used.

Other questions were raised, but lack merit, and
are not discussed. The order of the trial court, dis-
missing plaintiff's bill, is reversed, and the cause

remanded for further proceedings in accordance with this opinion. Plaintiff shall have the costs of this appeal.

Sharpe, C. J., and Bushnell, Boyles, Chandler, North, Starr, and Wiest, JJ., concurred.