## MAYER v. BUCHANAN.

### No. 446.

Municipal Court of Appeals for the District of Columbia.

Dec. 27, 1946.

C. Turner Hudgins, General Counsel, of Washington, D. C. (Ruffin A. Brantley, Asst. Gen. Counsel, of Washington, D. C., on the brief), for Robert F. Cogswell, of Washington, D. C., Adm'r of Rent Control for the District of Columbia, amicus curiae.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

Plaintiff appeals from an adverse judgment in an action for double the amount of excess rent collected from her by defendant, allegedly in violation of the District of Columbia Emergency Rent Act.[1]

According to the agreed statement on appeal plaintiff became the tenant of dwelling property in December 1941 under a lease which provided for a monthly rental of $85 and which was signed by defendant J. Wesley Buchanan as "Agent for the Owner only." It was later revealed that the property had rented on January 1, 1941, the freeze date set under the Rent Act,[2] at $65 per month. Plaintiff had paid and defendant had received rent at the monthly rate of $85 as provided in the lease, for a total of 41 months. It was on the basis of that many months times $20, or $820, that plaintiff computed her claim and sued for $1640 as authorized by the Act. The case was tried without a jury and the finding for defendant was a general one.

Defendant did not dispute that the rental on the freeze date was $65 nor that he had collected $20 more than that amount during each of the 41 months indicated. He claimed, however, that it was lawful for him to collect the higher rental because just before plaintiff moved into the property the owner had "made extensive and substantial repairs, both to the interior and exterior, at a cash outlay of $542.00, and these repairs consisted of painting the interior and exterior of the property, replacing gutters and downspouts, installing a new hot water heater, a new gas range, repairing and finishing flooring, and other items

Henry H. Brylawski, of Washington, D. C., for appellant.

Thomas B. Heffelfinger, of Washington, D. C. (W. Cameron Burton, of Washington, D. C., on the brief), for appellee.

---

[1] Code 1940, 45—1610.

[2] Code 1940, 45—1602.

of similar character." According to the agreed statement he did not claim that he or the owner had ever sought at the hands of the Rent Administrator an adjustment of the rent ceiling, either because of the repairs or for any other reason.

He claims that because of the expenditures for repairs the freeze-date rental of $65, which would otherwise by operation of law have become the statutory rental ceiling, was ineffective. He relies on Delsnider v. Gould, U.S.App.D.C., 154 F.2d 844, 848. There the building was a "shack" with no water, no plumbing, no electricity, no toilet, and no heat. The owner installed a water system, plumbing, electricity, a bathroom with tub and shower, finished the walls with Celotex, installed an electric refrigerator and an electrically-controlled furnace, rebuilt the front entrance, made repairs including repainting, laid a new living room floor, supplied screens, and completely furnished the house. The court held that this constituted new housing accommodations which had not been in existence on the freeze-date and which were therefore not governed by any statutory rent ceiling. This is obviously not such a case.

Here, on the undisputed testimony, there was no change in the structural condition of the property and the repairs were certainly not such as to entitle the owner to claim that there had been a complete rehabilitation of the property or that the result constituted "new housing accommodations." Defendant offered no evidence as to the previous condition of the property or anything to indicate that the expenditures were for other than normal routine repairs.

In similar cases it has been held that such expenditures do not amount to substantial capital improvements.[3] With even less accuracy can they be said to create "new housing accommodations."

What constitutes new housing accommodations, as distinguished from old ones which are merely improved, is ordinarily a question of fact. But as the court said in the Delsnider case, when "The evidence is compelling one way or the other" it becomes a question of law.[4] Here on the agreed statement the undisputed and conclusive evidence clearly shows that the accommodations were not new ones, that the $65 ceiling applied, and that the collection of a higher rental constituted a violation of the Rent Act.

Defendant disclaims liability on the further ground that his status was that of a mere agent as disclosed by his signature on the lease. We cannot agree with this contention. To escape liability he must have disclosed not only the fact of his agency but also the identity of his principal.[5] Nor is defendant helped by the fact that the identity of the owner was a matter of public record. He relies on Schwartz v. Westbrook, U.S.App.D.C., 154 F.2d 854, 855, where the court said: "* * * As to a stranger to the lease contract, the lessee is chargeable with notice of the record title to the land * * *." But that language does not apply here; for certainly defendant was no "stranger" to the lease. Moreover, the duty was not upon the tenant to discover the principal but upon the agent to disclose the principal's identity, if he expected to avoid personal liability.[6]

---

[3] Jacob Goodman & Co. v. Porter, Em. App., 156 F.2d 549; Thierry v. Gilbert, 1 Cir., 147 F.2d 603, affirming, D.C., 58 F.Supp. 235; Taylor v. Bowles, 9 Cir., 147 F.2d 824; Gale Realty Corp. v. Bowles, Em.App., 139 F.2d 496.

[4] See Janes v. Noorbolm, D.C.Mun.App., 47 A.2d 105, where an apartment had been unfurnished and was later provided with complete furniture, sleeping accommodations for nine persons, linen service, heat, electricity and other utilities. There we held that the change resulted in new housing accommodations and that the older ceiling did not apply.

[5] Dorsey v. Martin, D.C., E.D.Pa., 58 F.Supp. 722; Saco Dairy Co. v. Norton, 140 Me. 204, 35 A.2d 857, 150 A.L.R. 1299; Dodge v. Blood, 299 Mich. 364, 300 N.W. 121, 138 A.L.R. 322. See also Restatement of Agency, Sec. 321; see also annotations in 6 A.L.R. 641, 47 L. R.A.,N.S., 232.

[6] Ell Dee Clothing Co. v. Marsh, 247 N.Y. 392, 160 N.E. 651; Frederick Raff Co. v. Goeben, 116 Conn. 83, 163 A. 462, and cases there cited; Banjo v. Wacker, Mo.App., 251 S.W. 456; Berger v. Watjen, R.I., 106 A. 740; Curtis v. Miller, 73 W.Va. 481, 80 S.E. 774, 50 L.R.A., N.S., 601.

By contracting for the payment of rent above the legal ceiling, defendant did an unlawful act for which his principal could not have given him valid authority. When an agent does something which his principal could not authorize, he acts on his own responsibility.[7] Nor is an agent excused from liability in such a case because he acted only as agent.[8] And it is no defense that he paid over to his principal the moneys unlawfully collected,[9] after deducting his commissions.

Furthermore, defendant's liability is definately fixed by the Rent Act, Section 10 of which provides: "If any landlord receives rent * * * in violation of any provision of this chapter, * * * the tenant paying such rent * * * may bring * * * an action for double the amount by which the rent paid exceeded the applicable rent ceiling * * *."[10]

The Act defines a "landlord" as "* * * An owner, lessor, sublessor, or *other person* entitled to receive rent for the use or occupancy of any housing accommodations." (Emphasis supplied.) Code 1940, 45—1611 (g). The term "person" includes "* * * One or more individuals, firms, partnerships, corporations, or associations and *any agent*, * * * thereof." (Emphasis supplied.) Code 1940, 45—1611 (h).

We have held that although the Rent Act Act is in derogation of private rights, an "overwhelming necessity" requires that it be liberally construed to effect its obvious purposes.[11] Even under a construction more favorable to defendant we would be forced to the conclusion that he is among those defined by the Act as being subject to suit by tenant from whom he has collected more than the legal rent.

Reversed and remanded for further proceedings consistent with this opinion.

---

[7] Inland Waterways Corp. v. Hardee, 69 App.D.C. 268, 100 F.2d 678, reversed on other grounds Inland Waterways Corp. v. Young, 309 U.S. 517, 60 S.Ct. 646, 84 L.Ed. 901; Hirning v. Federal Reserve Bank, 8 Cir., 52 F.2d 382, 82 A.L.R. 297; Vann v. Federal Reserve Bank, D.C., E.D.Va., 47 F.2d 786; Mechem on Agency, 3d Ed., Sec. 391.

[8] Inland Waterways Corp. v. Hardee, supra; Quinn v. Southgate Nelson Corp., 2 Cir., 121 F.2d 190, affirming, D.C., 36 F.Supp. 873, certiorari denied 314 U.S. 682, 62 S.Ct. 185, 86 L.Ed. 546; Vann v. Federal Reserve Bank, supra.

[9] Hirning v. Federal Reserve Bank, supra.

[10] Code 1940, 45—1610.

[11] Moore v. Coates, D.C.Mun.App., 40 A.2d 68.