867 F.2d 800
 49 Fair Empl.Prac.Cas. 18, 49 Empl. Prac.
Dec. P 38,679,
51 Ed. Law Rep. 1133
 CONTINENTAL CASUALTY COMPANY, a Corporation, Plaintiff-Appellee,
v.
ANNE ARUNDEL COMMUNITY COLLEGE, Defendant-Appellant.
H. Stafford BULLEN; Lila R. Schwartz; Robert J. Di Aiso;
Leo C. Eckert; Walter S. Mills; Vincent A. Mulieri; Irene
Newhouse; Joan Willard; Aris T. Allen; Mary Bode;
Chester A. Kirk, Jr.; Thomas E. Florestano; Justus D.
Sundermann; John Palmer; James Atwell; Philip Clark;
Thomas S. Kubala; Board of Trustees of Anne Arundel
Community College, Defendants,
v.
BOARD OF TRUSTEES OF PRINCE GEORGE'S COMMUNITY COLLEGE, Amicus Curiae.
 No. 87-1151.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 1, 1988.
Decided Feb. 8, 1989.
 
 Joseph Anthony Schwartz, III (Steven L. Kreseski, Law Offices of Joseph A. Schwartz, III, P.A., Baltimore, Md., Noel G. Wilkinson, Manis, Wilkinson, Snider & Goldsborough, Annapolis, Md., on brief), for defendant-appellant.
 Harold Elmer Masback, III (Robert M. Pozin, Daniel J. Standish, Ross, Dixon & Masback, Washington, D.C., Charles P. Goodell, Jr., Goodell, Devries, Leech & Gran, Baltimore, Md., on brief), for plaintiff-appellee.
 (Daniel I. Sherry, Bowie, Md., on brief), for amicus curiae.
 Before WINTER, Chief Judge, and MURNAGHAN and SPROUSE, Circuit Judges.
 HARRISON L. WINTER, Chief Judge:
 
 
 1
 Continental Casualty Co. (Continental) obtained a declaratory judgment that it was not liable, on a policy of insurance it had sold to Anne Arundel Community College (College), for a $550,000 back pay award that the College had agreed to pay in settlement of female employees' claims that they were the victims of gender discrimination in employment. After hearing evidence of the intention of the parties, the jury found that the policy's "contractual obligations" clause excluded the back pay award from coverage.
 
 
 2
 The College appeals, and we affirm. The appeal presents issues of (1) collateral estoppel under Delaware and Iowa law, and (2) the interpretation of the insurance policy under Maryland law.
 
 I.
 
 3
 In 1972, the College purchased from Continental a three-year policy that insured members of the College's board of trustees as individuals against claims arising out of the performance of, or omission to perform, their duties as trustees. In February, 1974, apparently to meet industry competition, Continental unilaterally broadened its policy to provide "entity" coverage, that is, to insure the College, as well as the trustees individually, for its and their "wrongful acts," i.e., nonfeasance and misfeasance in making statements, performing acts or discharging a duty. The extension of coverage was contained in a "Liberalization Endorsement" that also contained the exclusion giving rise to this litigation:
 
 Paragraph IV--Exclusions
 
 4
 (b) The Insurer shall not be liable to make any payment for loss in connection with any claim against the Assureds ...
 
 
 5
 ....
 
 
 6
 (6) For any amounts due, under the terms of any contractual obligation....
 
 
 7
 The meaning of the exclusion became critical when, in 1978, a group of female teachers sued the College under four civil rights statutes, 42 U.S.C. Secs. 1983, 1985, 2000e-5 and 29 U.S.C. Sec. 206, alleging that they had been victims of gender discrimination in employment. Plaintiffs claimed that the College intentionally paid female teachers less than comparably situated male teachers. They sought differential back pay from April, 1975, as well as costs and attorney's fees. The several suits were consolidated and ultimately settled for $550,000 in differential back pay, plus costs and attorney's fees. Continental paid costs and attorney's fees, but denied liability under the policy for differential back pay. It then instituted this declaratory judgment action to determine the legal correctness of its position.
 
 
 8
 Continental had unsuccessfully litigated the application of the same "contractual obligations" exclusion to back pay awards in Iowa and Delaware state courts in 1980. In the Iowa action, Employers Mutual Casualty Co. v. Sioux City Community School District and Continental Casualty Company, No. CL 19-10933 (District Court for Polk County, Iowa, Fifth Judicial District 1980), the school district entered into a consent judgment to settle claims of female school custodians under the Equal Pay Act, 29 U.S.C. Sec. 206(d). The school district agreed to pay 75% of the claimed pay differential, an aggregate sum of $54,178.95. The trial court sustained the school district's claim for reimbursement against Continental for this amount on the ground that it was in settlement for a statutory violation of the Equal Pay Act, and not due under a "contractual obligation." Continental did not appeal.
 
 
 9
 In the Delaware action, Indian River School District, et al. v. Continental Casualty Company, No. 79C-NO9 (Superior Court for Sussex County, Delaware 1980), a federal district court had determined that a school district had wrongfully discharged a teacher for exercising his first amendment rights. It ordered the teacher reinstated with back pay. Continental resisted paying the back pay award on the ground that it was an amount due under a contractual obligation. The trial judge rejected the argument, ruling that the back pay award was based upon a finding of a violation of first amendment rights, not a breach of contract. Again, Continental took no appeal.
 
 II.
 
 10
 The College first contends that the full faith and credit clause of the constitution, as implemented by the full faith and credit statute, 28 U.S.C. Sec. 1738, required the district court to give the prior judgments in Sioux City and Indian River the same preclusive effect that the courts of Iowa and Delaware, respectively, would give them. It contends further that under the doctrine of collateral estoppel prevailing in these states, Continental was precluded from relitigating the application of the contractual obligations exclusion to back pay awards in this case.
 
 
 11
 We do not dispute that we must give the two state judgments the same preclusive effect that they would be given in the states in which they were rendered. See Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); Allen v. McCurry, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). We disagree, however, that Iowa and Delaware courts would give those judgments preclusive effect were the instant case litigated in either of those jurisdictions.
 
 
 12
 In both Iowa and Delaware, the rules of issue preclusion are substantially the same. There are four requirements for any issue preclusion: (1) the issue in the instant case must be identical to the issue concluded in the earlier action; (2) the issue must actually have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination of the issue in the prior action must have been necessary and essential to the resulting judgment. See Neoplan USA Corp. v. Taylor, 604 F.Supp. 1540, 1546 (D.Del.1985); Chrysler Corp. v. New Castle County, 464 A.2d 75, 80 (Del.Super.1983); Opheim v. Am. Interins. Exch., 430 N.W.2d 118, 120 (Iowa 1988); Hunter v. City of Des Moines, 300 N.W. 121, 123 (Iowa 1981). When employed offensively, there are usually two additional requirements for issue preclusion: (1) the party against whom preclusion is sought must have been afforded a full and fair opportunity to litigate the issue in the earlier action; and (2) there must be no other circumstances present that would justify allowing that party to relitigate the issue in the instant case. See Chrysler Corp., 464 A.2d at 81-84; Hunter, 300 N.W. at 126. From our examination of the court files in the Iowa and Delaware cases, we do not think that Iowa and Delaware, respectively, would give their judgments preclusive effect were the instant case tried in either of those jurisdictions.
 
 
 13
 At the outset, we stress that the primary issue in the instant case was the intention of the parties in formulating and applying the language of the contractual obligations exclusion. There was extensive evidence of the reasons why Continental decided to broaden coverage under its policy and how it intended the language of the exclusion to operate as a limitation on the broadened coverage. There was also evidence of the construction that the College placed on the exclusion following its adoption in 1974. For example, there was evidence that the College renewed the policy three times while the teachers' back pay claims were pending against it, each time warranting that there were no claims pending against it which, if valid, would be covered by the policy.
 
 
 14
 Neither the Iowa nor the Delaware action was concerned with the intent of the parties. Sioux City, for example, turned solely on the legal effect of the language of the exclusion irrespective of what Continental may have intended that language to mean. Indeed, the parties stipulated that the issue for decision was whether Continental's "policy provides coverage" without mention of what may have been the intention of the parties in purchasing and issuing the policy, respectively. The trial court's decision adverse to Continental stemmed solely from the policy language, and made no mention of Continental's intention.
 
 
 15
 Indian River, too, was concerned not with the intent of the parties but rather with the bare meaning of the language of the exclusion as applied to the facts of the case. The trial court in Indian River decided that the federal court's back pay award had been based upon "a finding of a violation of First Amendment rights, not a breach of contract," and that therefore "the award was not made 'under the terms of any contractual obligation....' " It was on this basis that the trial court required Continental to pay on its insurance policy.
 
 
 16
 Thus we think that the issue the instant case presents was not actually raised and litigated in either Sioux City or Indian River. We therefore hold that the Iowa and Delaware rules of issue preclusion do not permit the application of collateral estoppel in this case.
 
 III.
 
 17
 Having concluded that the College may not invoke collateral estoppel against Continental, we turn to the correctness of the district court's judgment under Maryland law.
 
 
 18
 In construing a contract of insurance, Maryland law requires us first to look to the language of the contract and to give it its ordinary and accepted meaning. If the language is ambiguous, however, that is, if it is " 'general' and may suggest two meanings to a reasonably prudent layperson," then we may resort to extrinsic evidence to determine the intent of the parties. "If the extrinsic evidence presents disputed factual issues, construction of the ambiguous contract is for the jury." Pacific Indem. Co. v. Interstate Fire & Casualty Co., 302 Md. 383, 389, 488 A.2d 486, 489 (1985).
 
 
 19
 The district court concluded that the language of the contractual obligations exclusion was ambiguous in that it did not clearly indicate whether the exclusion applied to the College's statutory equal pay obligations, which, though not expressly set forth in the teachers' contracts, could be deemed to constitute implied or quasi-contractual obligations, cf. Roland Elec. Co. v. Black, 163 F.2d 417, 426 (4 Cir.1947) (provisions of Fair Labor Standards Act with respect to minimum wages, overtime compensation and liquidated damages are to be read into and become a part of every employment contract subject to the act), cert. denied, 333 U.S. 854, 68 S.Ct. 729, 92 L.Ed. 1135 (1948). Under Maryland law, a trial court's conclusion that ambiguity exists in a writing is entitled to substantial weight. See Aetna Casualty & Sur. Co. v. Hartford Accident & Indem. Co., 74 Md.App. 539, 544-45, 539 A.2d 239, 241-42 (1988) (trial court's conclusion in this regard " 'is an exercise in judgment which should be overturned only if no reasonable suggestion of ambiguity can be entertained' ") (citation omitted). We think that in this case there is sufficient ambiguity as to whether the exclusion applies to an award of back pay, for violation of a statutory obligation not expressly set forth in the employment contract, to warrant resort to extrinsic evidence to determine the intent of the parties.
 
 
 20
 We see no useful purpose in detailing here the evidence of intent on the part of Continental and the College. It is enough to say that we think the evidence was legally sufficient for the district court to submit the issue to the jury and for the jury to conclude that the parties did not intend the insurance policy to extend to the award of back pay.
 
 
 21
 In the light of this conclusion, it is unnecessary for us to discuss Continental's contention that the College did not suffer a "loss" within the meaning of the policy because it merely paid the teachers amounts it was previously obligated to pay under its employment contracts and applicable law.
 
 
 22
 AFFIRMED.