## NORRIS v. RAEL et ux.

## BEITZELL v. NORRIS.

### Nos. 377, 378.

Municipal Court of Appeals for the
District of Columbia.

June 5, 1946.

Thomas B. Heffelfinger, of Washington, D. C. (W. Cameron Burton, of Washington, D. C., on the brief), for Grace R. Norris.

Dennis Collins, of Washington, D. C., for Mr. and Mrs. Joseph Rael.

H. Max Ammerman, of Washington, D. C. (Louis Ottenberg, of Washington, D. C., on the brief), for J. Garrett Beitzell.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

This appeal, like that of Janes v. Noorbolm et al., D.C.Mun.App., 47 A.2d 105, involves a claim growing out of an alleged rent overcharge. As in the Janes case, the controversy resulted from the renting of a furnished apartment at a higher figure than that previously charged for the same apartment unfurnished. We have concluded that our decision in the Janes case governs this case, and hence that the judgment below must be reversed.

The apartment in question was rented, unfurnished, at $40.50 per month on January 1, 1941, the freeze date under the District of Columbia Emergency Rent Act.[1] In 1942 the apartment was rented to Mrs. Norris and her husband, unfurnished, for $40.50 monthly. Mr. and Mrs. Norris fur-

---

[1] Code 1940, § 45—1602.

nished the apartment, and, after Mr. Norris entered the military service, Mrs. Norris authorized Mr. Beitzell, a real estate broker, to rent the apartment, furnished, for $85 a month. Beginning August 12, 1944, the apartment was rented furnished by Mr. Beitzell at $85 a month to Mr. and Mrs. Rael. This rental was regularly paid through March 12, 1945, to Mr. Beitzell, who in turn forwarded the rentals, less 5% for his commission, to Mrs. Norris.

This suit was filed by Mr. and Mrs. Rael against Mrs. Norris, claiming $623, representing twice the difference between the rent paid for a period of seven months and the rent ceiling. Alleging that prior to renting the apartment to Mr. and Mrs. Rael she had made an arrangement with Mr. Beitzell's office "to take care of everything legally necessary" to establish the rent ceiling at $85, Mrs. Norris filed a cross-claim against Mr. Beitzell to recover from him any amount which might be recovered against her by plaintiffs. She also filed a counterclaim against Mr. and Mrs. Rael for the alleged rental value of the furnishings. The case was called for trial before a jury. The trial judge directed a verdict in favor of plaintiffs against Mrs. Norris for $623, and allowed an attorney's fee of $50. The claim between Mrs. Norris and Mr. Beitzell was submitted to the jury and resulted in a verdict in favor of Mrs. Norris for the same amount as was found against her. These appeals followed.

The cases were decided in the trial court prior to the decision on March 25, 1946, of the United States Court of Appeals in Delsnider v. Gould, 154 F.2d 844, and, of course, prior to the decision of this court in Janes v. Noorbolm et al. The facts in the Janes case differed somewhat from those at issue here. In the former case the apartment had not only been furnished before the last renting but various services to the sub-tenant had been added. So far as the record here discloses, the only change in the housing accommodation was the addition of the furniture.

■ As stated by the United States Court of Appeals in the Delsnider case, the question as to whether the housing accommodations involved are new ones not rented on the critical date, or are old ones with substantial capital improvements or alterations, is a question of fact, which must, unless the evidence is compelling one way or the other, be decided by the jury. In that case, involving the change of a "shack" into a remodeled building equipped with all facilities and complete furnishings, the court held as a matter of law that new housing accommodations had been created, and hence that the plaintiff could not recover. In the Janes case, where the apartment was completely furnished and various services supplied with it, we held also that new and different housing accommodations had been supplied. In Gilbert v. Thierry, D.C.Mass., 58 F.Supp. 235, affirmed 1 Cir., 147 F.2d 603, where the landlord had merely installed a mechanical refrigerator, it was held that the resulting accommodation was not new but was the old one with improvements or alterations.

■■ Here an inventory of the furniture in the apartment as it was rented to plaintiffs was produced in court, but such inventory was not received in evidence and does not appear in the record. The record shows, however, that Mrs. Norris "proffered testimony to show the furnished premises involved were not the same premises on which the ceiling was $40.50." The trial court excluded this evidence. Such ruling was erroneous. Defendant was entitled to support her claim that the accommodations rented at the higher figure were new and different accommodations. It was also error to direct a verdict for plaintiffs. At the very least, the question presented was one of fact for determination by the jury. While we are inclined to the view under the decision of the United States Court of Appeals in the Delsnider case that a directed verdict for defendant should have been given, we have concluded that under the circumstances, in view of the lack of information before us as to the extent to which the apartment was furnished, a new trial should be granted, such trial to be conducted in accordance with the opinion of the United States Court of Appeals in the Delsnider case, with this opinion and with our opinion in the Janes case.

Since the case must be retried, we mention two additional points raised on this appeal.

■ The first is the refusal of the trial judge to admit evidence in support of Mrs. Norris' counterclaim for the rental value of her furniture. We hold this ruling was correct. The question becomes moot if plaintiffs fail to recover on their claim for double the overcharge. Should they recover, they can do so only on the theory that the housing accommodations rented by them were not new ones, but the old ones with capital improvements or alterations. The Rent Act permits landlords to petition the Rent Administrator for increased rentals based upon operating costs, or capital improvements, or alterations. To permit suits for such increased costs would be to recognize evasions of the Act. We conclude the procedure authorized by the Act in this regard is exclusive. ·

■ The final question involves the claim of Mr. Beitzell that the cross-claim against him should have been dismissed as a matter of law. He urges that even if one of his clerks did agree with Mrs. Norris to take care of everything necessary to establish the rent ceiling at $85 such agreement was without consideration and hence not enforceable, and that at most his office was guilty of nonfeasance, and hence that he was not liable. His argument is that the 5% commission was for the rental only. We think that the trial judge was correct in not dismissing the cross-claim. The question, also, becomes moot if plaintiffs do not recover against Mrs. Norris. Whether or not an agreement was made by the real estate agent to obtain the rent ceiling increase was a question of fact properly left to the jury. The agency, if established, was entire in that it included not only renting the apartment at $85 a month, but obtaining approval from the Rent Administrator of such rental. Furthermore under the 5% arrangement, he collected a higher commission for renting at the higher rental. The agreement to deal with the Rent Administrator, therefore, was not gratuitous. Admittedly, the agreement was not performed. Therefore, the broker would be liable for damages proximately resulting from neglect of his duty. Though Mr. Beitzell himself knew nothing of the arrangement, he specifically affirmed, and was responsible for, the acts and omissions of his employees.

Reversed.