## SAWYER v. WARNER.
### No. 649.

Municipal Court of Appeals for the
District of Columbia.

Oct. 20, 1948.

Rehearing Denied Nov. 1, 1948.

Leon L. Sclawy, of Washington, D. C., for appellant.

Edward E. O'Neill, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Appellee, Zalie V. Warner, brought this action in the Municipal Court under the District of Columbia Emergency Rent Act[1] to recover double the amount of an alleged rental overcharge. Appellant, Mary Sawyer, twice moved for a directed verdict, and, after the return of a verdict for appellee asked for a judgment notwithstanding the verdict or a new trial. Upon adverse rulings by the trial judge and the entry of judgment for $800 plus costs and attorney's fees, she prosecutes this appeal.

On September 20, 1946, appellant rented the premises in question to appellee at a total monthly price of $125. They consisted of three sleeping rooms, separately numbered 7, 8 and 9, on the first floor of a building at 2016 G Street, N.W. Rooms No. 7 and No. 8 were interconnected, but access to Room No. 9 could be obtained only through a common hall. In addition to the sleeping rooms, appellee had the exclusive use of a bathroom on the second floor, and a small kitchen, approximately 5 ft. by 7 ft., connected only with Room No. 9.

Only one of these rooms was rented on the Rent Act freeze date. However, appellant's predecessor in interest, Lydia Richards, applied for a rent ceiling in March 1942. Thereafter, the Administrator issued an order of December 31, 1946, a little over three months after appellee moved in, setting ceilings of $24 on Room No. 7, $22 on Room No. 8 and $24 on Room No. 9. This order listed them by number as sleeping rooms and established a minimum service schedule requiring bed linen, heat, hot water, furniture, furnishings, electricity, maid service and maintenance in good habitable condition. The numbers remained on the doors throughout appellee's occupancy. This ceiling was never changed and, in fact, there was no application for alteration except one filed by appellant on August 8, 1947, after the dispute leading to the present action had arisen.[2]

After some eleven months of occupancy, during which time he paid the $125 rental, appellee visited the Rent Administrator's office and discovered the discrepancy between the established ceiling and the rent he was paying. Thereafter upon advice of counsel, he paid only $70 per month. The endorsement on the rent checks showed that they were accepted under protest. Upon termination of the tenancy, this suit was brought for double the difference between the total ceiling of $70 and the $125 paid during the eleven months of occupancy. Appellant defended on the ground that the rent ceiling set by the Administrator's order of December 31, 1946, was not applicable because the accommodations were "new housing" and therefore the contract between the parties determined the applicable rent until such time as a new ceiling was determined by the Administrator.

The case was tried to a jury, and evidence advanced by appellee showing that the space occupied and services rendered were substantially the same as they had been at the time the ceiling was set, with the exception that a refrigerator had been installed in Room No. 9, and appellee had been given the exclusive use of one of the two bathrooms on the second floor, one flight above the rooms used by appellee. Appellee and his wife testified that it was necessary for them to place their own lock on this room to secure their exclusive use. Prior to appellee's occupancy both bathrooms were used by the various roomers in the house. It was argued by appellant that the appellee had the exclusive use of these rooms "as an apartment", and that this fact, together with the changes mentioned above, was enough to change the premises to "new" housing accommodations. The appellee contested appellant's assertion that the kitchen constituted an addition to the rooms. He pointed out that it only could be reached through Room No. 9 and that, even though it was not specifically included in the rent ceiling order, it had been available for the use of previous occupants of this room. He further urged that its physical aspects and the condition of the room proved that it had been so used. Appellee and his wife also testified to the fact that the accommodations were not rented as an apartment but as rooms. They stated that

[1] Code 1940, Supp. V, 45—1610(a).

[2] This application was subsequently dismissed when appellant terminated her interest in the premises.

they had sought to obtain a lower rental but that this was refused on the ground that each of the three rooms rented for a certain amount and thus the total could not be reduced. The trial court having heard the evidence refused appellant's motion for a directed verdict and sent the case to the jury to resolve the question as to whether the premises were so changed as to constitute "new housing accommodations" and thus were not subject to the established ceiling.

Appellant makes nine separate assignments of error, but in substance they amount to the single assertion that it was error to allow the case to go to the jury.

■ The parties agree that one question is presented, i. e., was the rent ceiling set by order of the Administrator December 31, 1946, applicable to the housing accommodations rented appellee during his occupancy? Since such ceiling had been regularly and properly established and stood unchanged throughout the term, it can only have been rendered invalid by alteration, or change of the building, real estate, services, or facilities. Both sides cite and rely upon the case of Delsnider v. Gould, 81 U.S.App.D.C. 54, 154 F.2d 844. Therein it is said 81 U.S.App.D.C. at pages 57, 58, 154 F.2d at page 847: "The question whether the housing accommodations involved are new ones not rented on the critical date, or are old ones with substantial capital improvements or alterations, is a question of fact, which, * * * must, unless the evidence is compelling one way or the other, be decided by the jury." The trial judge followed this mandate and submitted the issue to the jury, and it was resolved against appellant. Appellant now says that the evidence was so compelling in his favor as to require a directed verdict. We think not.

■ Appellee sued for double the excess rent paid from the beginning of his tenancy, September 20, 1946, up to August 20, 1947 a period of eleven months. The jury, however, awarded him only double the excess rent for slightly over seven months, which obviously represented the period beginning with December 31, 1946, when the Rent Administrator's order fixing the ceiling became effective. Based upon the evidence the jury could have decided that the alleged change from "rooms" to an "apartment" did not constitute any alteration of services and hence did not give rise to new housing accommodations. The jury also could have decided that the exclusive use of the kitchen had always accompanied the rental of one of the rooms occupied by appellee and thus that no new housing accommodations were involved in its use by appellee. This left for consideration only the addition of a refrigerator and the giving of exclusive use of a bathroom in lieu of nonexclusive use by previous occupants of the rooms. As was noted in Delsnider v. Gould, supra, the addition of a refrigerator does not result in new housing accommodations but is the old with improvements or alterations. Furthermore, we can not say as a matter of law that giving exclusive instead of nonexclusive use of a bathroom would constitute new housing accommodations within the meaning of the statute as defined in the Delsnider case, particularly where the bathroom was located on another floor and where during a part of the tenancy at least it continued to be used by other roomers.[3] We believe that there was clearly sufficient evidence to constitute a question of fact for the jury.

Appellant also complains as to certain confusion in the instructions of the trial judge to the jury. However, ample opportunity was given to counsel to request additional instructions or to object to those given, and since no use was made of such opportunity she may not complain now.

We have carefully examined the record and the other assignments of error and find them to be without merit.

■ Subsequent to the argument of this case here, appellee filed a motion to allow court costs in the amount of $17.45 paid for the official transcript of proceedings in the cause before the trial court and also for the allowance of additional attorney's fees occasioned by the appeal. The

---

[3] Cf. Mayer v. Buchanan, D.C.Mun. App., 50 A.2d 595; Norris v. Rael, D.C. Mun.App., 47 A.2d 766, 74 W.L.R. 722; James v. Noorbolm, D.C.Mun.App., 47 A.2d 105, 74 W.L.R. 622.

trial court had previously allowed attorney's fees in the amount of $200 as permitted by the Act in connection with the trial of the case. We have previously held that there being no rule on the subject either in the trial court or in this court the cost of reporters' transcript cannot properly be taxed as costs by this court or by the trial court.[4] With respect to attorney's fees on appeal in cases such as the present, we are bound by Heitmuller v. Berkow, —— U.S.App.D.C. ——, 171 F.2d 741, and therefore deny the motion for the allowance by this court of attorney's fees in the appellate proceedings, but remand the case to the Municipal Court for further proceedings in accordance with the Heitmuller case.

Affirmed, with instructions.

---

[4] Fraser v. Crounse, D.C.Mun.App., 47 A.2d 96.